[No. B193114. Second Dist., Div. Seven. Dec. 19, 2007.]

TERI PAGARIGAN et al., Plaintiffs and Appellants, v.
AETNA U.S. HEALTHCARE OF CALIFORNIA, INC., et al., Defendants
and Respondents.

## COUNSEL

Balisok & Associates, Inc., Russell S. Balisok, Steven C. Wilheim; Law Office of Carol S. Jimenez and Carol S. Jimenez for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Kirk A. Patrick and Antoinette D. Paglia for Defendants and Respondents.

## OPINION

**WILEY, J.**[*]—The law required plaintiffs to amend their complaint within 30 days. They did not, and so the trial court dismissed their case. Plaintiffs tried, unsuccessfully, to set aside this dismissal. The trial court's actions were valid. We affirm.

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## I

Plaintiffs are Teri, Mary, and John Pagarigan. They are Johnnie Pagarigan's adult children. Johnnie Pagarigan suffered a stroke and entered the Magnolia Gardens nursing home in February 2000. She died in June 2000. Her adult children claim abuse and poor medical care caused her death.

The Pagarigans sued two groups. The first is the Aetna group of defendants: Aetna U.S. Healthcare of California, Inc.; Aetna U.S. Healthcare, Inc.; and Aetna Health Plans of Southern California, Inc. These Aetna entities (Aetna) were to blame for their mother's death, the Pagarigan children say, because Aetna operated the health maintenance organization responsible for Magnolia Gardens. Aetna is a party to this appeal.

These plaintiffs also sued other entities and individuals connected with Magnolia Gardens. These defendants are not parties to this appeal. For simplicity, we refer to this second group as the non-Aetna defendants, or as the other defendants.

The Pagarigans filed their complaint on February 26, 2001. There was litigation (including two appeals to this court) about arbitration, which ultimately ended with decisions against arbitration. Then Aetna and the other defendants filed separate demurrers, which the trial court sustained in separate orders.

The Pagarigans appealed both orders to this court, but at different times. The different timing arose because the trial court orders differed in content. The trial court sustained the Aetna demurrer *without* leave to amend. This happened on April 8, 2003. The Pagarigans appealed that final order, thus bringing an appeal to this court involving only Aetna. Regarding the non-Aetna defendants, the trial court sustained the demurrer *with* leave to amend regarding some claims. In response, then, the Pagarigans did not appeal, but rather amended their complaint. However, the non-Aetna defendants again demurred, and the trial court sustained the new demurrer without leave to amend. At this later time, the Pagarigans then appealed this final order about the non-Aetna defendants to this court. This non-Aetna appeal was separate from and later than the Aetna appeal.

On the Aetna appeal, this court issued its unpublished decision on October 25, 2005. This decision reversed the judgment and remanded the case with instructions. The instructions were to sustain the Aetna demurrer *with* leave to amend as to the first and 11th causes of action, to sustain the Aetna demurrer *without* leave to amend on the remaining counts, and for further proceedings consistent with that opinion.

Regarding the non-Aetna defendants, this court issued its unpublished decision about 10 months later, on August 23, 2006. The non-Aetna appeal thus was pending in this court when the Pagarigans and Aetna returned to the trial court following this court's decision of October 25, 2005.

As to the Aetna defendants, the clerk of this court certified that the October 25, 2005 decision was final and mailed notice of the issuance of the remittitur to the parties. This notice of remittitur was on February 17, 2006. On February 17, 2006, then, this court handed jurisdiction of the Aetna case back to the trial court. For about six weeks, nothing happened. Then on April 6, 2006, Aetna brought an ex parte motion in the trial court. Aetna asked the trial court to dismiss the Pagarigans' case against Aetna. Aetna's rationale was that the law gave the Pagarigans 30 days to file an amended complaint against Aetna, and the Pagarigans had not done so.

The Pagarigans filed their opposition on April 6, 2006, the same day that Aetna filed its ex parte motion. Simultaneously and in the alternative, the Pagarigans moved to stay the case. Their logic was that the case against the non-Aetna defendants remained on appeal. The Pagarigans' attorney declared that to proceed against Aetna alone would cause a "waste of resources by the parties and the court" because "[d]iscovery, law and motion and ultimately trial in this matter will be duplicative . . . ."

Aetna and the Pagarigans brought their 122 pages of ex parte briefing to the trial court on a busy morning. The trial judge called *Pagarigan v. Aetna* at the end of its calendar, knowing that a jury was due to return shortly. The trial court assayed the matter swiftly and stated some preliminary doubt "that things should be stayed against Aetna. Because it seems to me all we're talking about, I assume, is discovery here, and I don't see why that [proposed stay] necessarily makes any sense . . . . [¶] [The parties] have a right just as everybody has a right to a prompt resolution of this and to go forward. . . . [T]o stay all discovery, you've got an uphill battle on that. [¶] I'm just sort of outlining for you what you all are going to need to address me on." The court then continued the matter until May 8, 2006, for further study. The court invited the parties to file further briefing, which they did. At the hearing on May 8, the court heard further oral argument and then granted Aetna's motion to dismiss the Pagarigans' action against it. The court's order did not affect the Pagarigans' case against the other defendants, which is proceeding.

The Pagarigans then moved to set aside this order of dismissal on the basis of mistake, inadvertence, surprise, or excusable neglect. The parties fully briefed this motion and argued it orally on June 21, 2006. The trial court took the motion under submission and later denied it in a written opinion that discussed pertinent authorities. The Pagarigans filed a timely appeal.

## II

There are two issues. First, was the trial court right to grant Aetna's motion to dismiss? Second, was the trial court right to deny the Pagarigans' motion to set aside this order of dismissal on the basis of mistake, inadvertence, surprise, or excusable neglect? We answer yes to both questions.

### A

The first issue concerns dismissal. A particular statute governs this issue. That statute is section 472b of our Code of Civil Procedure. We emphasize some key words of the last sentence of section 472b, which states that "[w]hen an order sustaining a demurrer without leave to amend is reversed or otherwise remanded by any order issued by a reviewing court, any amended complaint *shall be filed within 30 days* after the clerk of the reviewing court mails notice of the issuance of the *remittitur.*" (Italics added.)

This statute is on point. One can tell by comparing the statute's words to the events at bar. We take this step by step. The trial court entered an order sustaining Aetna's demurrer without leave to amend. This court reviewed that order and remanded the matter to the trial court. Code of Civil Procedure section 472b dictates that the plaintiffs "shall" file any amended complaint "within 30 days after the clerk of the reviewing court mails notice of the issuance of the remittitur." The clerk of this court took that remittitur action on February 17, 2006. Plaintiffs did not file an amended complaint within 30 days of February 17, 2006.

The plain language of Code of Civil Procedure section 472b sets a deadline. Plaintiffs did not meet it. The trial court correctly granted Aetna's motion to dismiss the Pagarigans' case against Aetna.

The Pagarigans say that Code of Civil Procedure section 472b's 30-day deadline does not apply in this case because that deadline conflicted with this court's more specific opinion of October 25, 2005. The Pagarigans point to that opinion's final part, which gave instructions for remand. These instructions were "to sustain the demurrer with leave to amend as to the first and eleventh causes of action in the Pagarigans' complaint and to sustain the demurrer without leave to amend as to the remaining counts against Aetna, and for further proceedings consistent with this opinion." In claiming this supposed conflict between section 472b and the appellate instructions, the Pagarigans raise an issue of law subject to independent review.

 This supposed conflict, however, does not exist. Code of Civil Procedure section 472b sets out a procedural timeline. The appellate opinion

set out substantive requirements. The substantive requirements could have been met within the procedural timeline. This is especially true here because events moved in slow motion. This court filed its appellate opinion on October 25, 2005. This court's clerk did not mail notice of the issuance of the remittitur—and hence section 472b's 30-day clock did not start ticking—until February 17, 2006. So the Pagarigans had nearly four months to prepare for the *beginning* of their 30-day period for action. Once this 30-day clock began to tick, it would have been straightforward for the Pagarigans to file an appropriate pleading. This pleading could have been, for instance, a motion (1) to enter an order sustaining Aetna's demurrer as the Court of Appeal had directed, and (2) for leave to file an appropriately amended complaint. Such a pleading would have complied fully with all authorities. Indeed, it would have *effectuated* these rules. It would have kept this case moving forward, which is the aim of section 472b. The Pagarigans' claim of conflict has no basis.

The Pagarigans cite authorities for two different rules. One rule is that appellate directions to a trial court are binding. This is true but is no excuse for the Pagarigans' inaction. Another rule is that leave of court is required under some circumstances for plaintiffs to amend their complaint. True again, but again this is no excuse for Pagarigans' inaction here.

In sum, Code of Civil Procedure section 472b required the Pagarigans to act within 30 days of the February 17, 2006 remittitur date. The Pagarigans did not act within 30 days. It was not error for the trial court to grant Aetna's motion to dismiss the Pagarigans' suit.

B

The second issue is whether the trial court erred when it denied the Pagarigans' motion to set aside the dismissal of their case. The statutory authority here is section 473, subdivision (b), of the Code of Civil Procedure. Section 473, subdivision (b), contains two sentences that are independently pertinent. The relevant text of this subdivision provides: "[1] The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . . [2] Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client,

unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

Sentence [1] is the *discretionary* relief provision of Code of Civil Procedure section 473. Sentence [2] is that section's *mandatory* relief provision. The Pagarigans' motion relied on both provisions. Each provision raises a separate issue.

1

The second Code of Civil Procedure section 473 issue concerns the *discretionary* relief provision. We review only to detect abuses of discretion. (*Generale Bank Nederland v. Eyes of the Beholder* (1998) 61 Cal.App.4th 1384, 1399 [72 Cal.Rptr.2d 188].) Two reasons show the trial court did not abuse its discretion by declining to set aside the dismissal.

First, the Pagarigans' mistake of law was unreasonable. As the trial court remarked during argument, section 472b of the Code of Civil Procedure is "absolutely completely clear." Moreover, if doubt could be imagined, the trial court correctly observed that, "[i]f [the Pagarigans] had any question, you should have filed something. You should have come in and asked the court for leave to file something, or you should have acted on it." The Pagarigans say that this issue was complex and debatable, but it was not. The trial court was right. The statute is clear.

The Pagarigans say that the trial judge made an initial comment that demonstrates their reading of the law was reasonable. They quote a statement at the first ex parte hearing. The Pagarigans take this statement out of context. The transcript reveals that the trial judge was not stating her own conclusion, but was simply repeating the Pagarigans' argument in an effort to ensure she understood it correctly.

The trial court correctly concluded that the Pagarigans' claimed mistake of law was unreasonable.

A second reason supports the trial court's refusal to grant discretionary relief. This reason is that the Pagarigans' inaction after remand appeared to the trial court to be "intentional conduct" rather than mistake, inadvertence, surprise, or neglect. The trial court noted that the Pagarigans never asserted ignorance of Code of Civil Procedure section 472b. To the contrary, the Pagarigans had demonstrated their awareness of this statute by citing it. The trial court reasonably suggested that the Pagarigans had chosen to ignore this plain statute for "strategic advantage." The Pagarigans had tried to stay their case against Aetna. Deliberate inaction after remand is a unilateral way to

attempt to help oneself to a stay. As the trial court put it, "[the Pagarigans] were aware of section 472b and ignored it, perhaps because they hoped to defer or postpone any further trial court proceedings until other matters were concluded at the Court of Appeal."

■ This interpretation of events is logical. The Pagarigans' attorney was well aware of the governing provision of law because he cited it in his attorney affidavit of fault. As the trial court correctly found, his asserted error of law was unreasonable, for the attorney professed uncertainty where there was clarity. The attorney also had an objectively strategic reason for his action. He wanted a stay. Objectively, his unreasonable "mistake" of law would serve his strategic goal by giving him supplemental time "not available to practitioners who follow the rules . . . ." (*Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1073 [36 Cal.Rptr.3d 637].) Under these circumstances, it was reasonable for the trial court to suggest that the Pagarigans' actions were deliberate rather than inadvertent. Moreover, the opportunity to observe demeanor in the trial court also informed the trial court's suggestion. In this court, the Pagarigans provide no basis for upsetting this reasonable inference by the trial court. Designing conduct is not mistake, inadvertence, surprise, or neglect. (See *id.* at pp. 1073–1074.)

In sum, the trial court's application of the *discretionary* relief provision was correct as a matter of law.

2

We next consider the *mandatory* relief provision. We give de novo review to applications of this provision. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612 [107 Cal.Rptr.2d 489].)

■ The mandatory relief provision of Code of Civil Procedure section 473 has a rather narrow application. This provision operates only where there has been a "resulting default judgment or *dismissal* entered against [the] client . . . ." (Code Civ. Proc., § 473, subd. (b), italics added.) Courts have considered carefully this particular use of the word "dismissal." "[T]he Legislature intended the word 'dismissal' to have a limited meaning in the context of the mandatory provision of section 473(b)." (*English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 148 [114 Cal.Rptr.2d 93].) "[T]he mandatory provision only applies narrowly to defaults and dismissals 'akin' to defaults . . . ." (*Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 482 [116 Cal.Rptr.2d 882] [rejecting application of mandatory provision despite counsel's assertion of counsel's "valid mistake of law"].)

As we have just recited, however, the trial court did not believe that the failure to timely file an amended complaint was due to mistake, inadvertence,

surprise, or neglect, but was instead knowing and intentional conduct. (See *Jerry's Shell v. Equilon Enterprises, LLC, supra*, 134 Cal.App.4th at pp. 1073–1074.) Designing conduct that leads to a dismissal is not akin to a default.

In conclusion, the trial court did not abuse its discretion when it decided that the Pagarigans' motion did not warrant mandatory relief.

### III

The orders are affirmed. Aetna is to recover its costs on appeal.

Woods, Acting P. J., and Zelon, J., concurred.

A petition for a rehearing was denied January 18, 2008, and appellants' petition for review by the Supreme Court was denied March 12, 2008, S160407. Moreno, J., did not participate therein.