[No. A127191. First Dist., Div. Five. May 27, 2011.]

DONALD W. DYE et al., Plaintiffs and Appellants, v.
CATERPILLAR, INC., et al., Defendants and Respondents.

[No. A127797. First Dist., Div. Five. May 27, 2011.]

DONALD W. DYE et al., Plaintiffs and Appellants, v.
INGERSOLL RAND COMPANY et al., Defendants and Respondents.

## Counsel

Brent Coon & Associates, Richard A. Brody, Karen J. Chedister, Paula A. Rasmussen and Michael A. Levy for Plaintiffs and Appellants.

Sedgwick, Detert, Moran & Arnold, Steven D. Wasserman, Kirk C. Jenkins and Brian R. Thompson for Defendant and Respondent Caterpillar, Inc.

Krieg, Keller, Sloan, Reilley & Roman, Mary Eileen Reilley, Allison Lane Cooper and Dani H. Rogers for Defendant and Respondent NACCO Materials Handling Group, Inc.

Stevens, Drummond & Gifford, David A. Gifford, Gary T. Drummond and Robert G. Engel for Defendant and Respondent Gardner Denver, Inc.

Gordon & Rees, Michael J. Pietrykowski and Don Willenburg for Defendant and Respondent Ingersoll Rand Company.

Carroll, Burdick & McDonough, Rodney L. Eshelman and Laurie J. Hepler for Defendant and Respondent Lippmann-Milwaukee, Inc.

McKenna Long & Aldridge, Lisa L. Oberg and Daniel B. Hoye for Defendants and Respondents Terex Corporation and Cedarapids, Inc.

Hanson Bridgett, Merton A. Howard and Eric W. Junginger for Defendant and Respondent Telsmith, Inc.

Bassi Edlin Huie & Blum, Fred M. Blum and Antonio P. Garcia, Jr., for Defendants and Respondents Deister Machine Company, Inc., and Portec, Inc.

Selman Breitman, A. Scott Goldberg, Rachel E. Hobbs and Richard M. Lee for Defendant and Respondent Bucyrus International.

Burnham Brown, Eric R. Haas and Ulla M. Pajala for Defendant and Respondent The Robbins Company.

McMillan & Shureen and George J. Keller for Defendant and Respondent Atlas Copco North America, LLC.

Epstein Becker & Green, Steven R. Blackburn and Andrew J. Sommer for Defendants and Respondents EIMCO/Trident and Sandvik Mining and Construction USA LLC.

## OPINION

**BRUINIERS, J.**—Donald W. Dye and his wife, Valerie (hereafter the Dyes), allege that Donald suffered from silicosis and other pulmonary diseases as a result of exposure to silica in his use of defendants' defective products.[1] In a prior unpublished opinion on consolidated appeals (*Dye v. Caterpillar* (Nov. 17, 2008, A114948, A116022)), this court reversed orders sustaining demurrers, without leave to amend, to the Dyes' third and fourth amended complaints. On remand, the Dyes filed a fifth amended complaint 108 days after the clerk of this court mailed notice of the issuance of remittitur. Defendants objected, asserting that the fifth amended complaint was untimely under Code of Civil Procedure section 472b.[2] The trial court agreed. The Dyes now appeal from the trial court's orders dismissing each of the defendants and also from the trial court's denial of their request for relief under section 473, subdivision (b).[3] We reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Dyes filed their initial complaint in this action on November 5, 2004. Donald Dye alleged that he had been diagnosed with "silicosis, pulmonary fibrosis and allergic bronchopulmonary asperillosis." The complaint asserted

---

[1] We hereafter use "defendants" to refer to the respondents in these appeals, which are Caterpillar, Inc. (Caterpillar), Gardner Denver, Inc. (Gardner Denver), Lippmann-Milwaukee, Inc. (Lippmann-Milwaukee), Deister Machine Company (Deister), Telsmith, Inc. (Telsmith), Bucyrus International (Bucyrus), Terex Corporation (Terex), Cedarapids, Inc. (Cedarapids), Portec, Inc. (Portec), Ingersoll Rand Company (Ingersoll Rand), EIMCO/Trident and Sandvik Mining and Construction USA LLC (EIMCO/Sandvik), Atlas Copco North America, Inc. (Atlas Copco), The Robbins Company (Robbins), and NACCO Materials Handling Group, Inc. (NACCO).

[2] Unless otherwise noted, all further statutory references are to the Code of Civil Procedure. Section 472b provides: "When a demurrer to any pleading is sustained or overruled, and time to amend or answer is given, the time so given runs from the service of notice of the decision or order, unless the notice is waived in open court, and the waiver entered in the minutes. *When an order sustaining a demurrer without leave to amend is reversed or otherwise remanded by any order issued by a reviewing court, any amended complaint shall be filed within 30 days after the clerk of the reviewing court mails notice of the issuance of the remittitur.*" (Italics added.)

[3] Section 473, subdivision (b), provides, in relevant part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . . Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

that Donald Dye was physically harmed by silica exposure caused by equipment manufactured by defendants.

After several rounds of demurrers were sustained by the trial court, with leave to amend, the Dyes filed a third amended complaint on September 23, 2005. The third amended complaint named Caterpillar, Gardner Denver, Allis-Chalmers Corp. (Allis-Chalmers), Lippmann-Milwaukee, Deister, Telsmith, Bucyrus, Terex, Cedarapids, Portec, Ingersoll Rand, EIMCO/Sandvik, NACCO, Atlas Copco, Robbins, Vallen Safety Supply Company (Vallen), Moldex-Metric, Inc. (Moldex-Metric), Wix Corp. (Wix), Tumsco, Inc. (Tumsco), Genuine Parts Company (Genuine), Napa Valley Auto Parts, Inc. (Napa Valley Auto Parts), and 3M Corporation (3M) as defendants. The third amended complaint included causes of action for negligence, "strict liability—failure to warn," "strict liability—design defect and consumer expectation," and breach of implied warranties. In addition, in the complaint's sixth cause of action, Valerie Dye sought damages for loss of consortium.

*The Third Amended Complaint and the First Appeal*

A number of defendants responded to the third amended complaint by filing demurrers. After hearing argument, on May 15, 2006, the trial court issued an order and statement of decision in which it sustained the demurrers of defendants Gardner Denver, Lippmann-Milwaukee, Deister, Telsmith, Bucyrus, Terex, Cedarapids, Portec, and Ingersoll Rand without leave to amend. The court treated Caterpillar's demurrer as a motion to strike and sustained "the demurrer of defendant Caterpillar, Inc." without leave to amend. It also sustained the demurrers of Moldex-Metric, Vallen, and 3M, but granted the Dyes leave to amend the complaint with respect to those defendants. On July 14, 2006, the Dyes filed an appeal (No. A114948) from the trial court's order sustaining the demurrers to the third amended complaint, without leave to amend, and striking the complaint as to Caterpillar.[4]

*The Fourth Amended Complaint and the Second Appeal*

Fifteen days after the trial court's May 15, 2006 order, the Dyes filed a fourth amended complaint. The fourth amended complaint named Allis-Chalmers, EIMCO/Sandvik, Atlas Copco, Robbins, Vallen, Moldex-Metric, Wix, Tumsco, Napa Valley Auto Parts, 3M, and NACCO as defendants. The fourth amended complaint did not name the first appeal defendants.[5]

---

[4] Gardner Denver, Lippmann-Milwaukee, Deister, Telsmith, Bucyrus, Terex, Cedarapids, Portec, Ingersoll Rand, and Caterpillar are hereafter referred to as "the first appeal defendants."

[5] Moldex-Metric, Wix, 3M, Tumsco, Genuine, Napa Valley Auto Parts, and Vallen were later voluntarily dismissed.

Defendants EIMCO/Sandvik, Atlas Copco, and Robbins responded to the fourth amended complaint by filing demurrers. The trial court sustained the demurrers to the fourth amended complaint without leave to amend. Judgments were then entered in their favor.

The Dyes filed an appeal (No. A116022) from the judgments entered in favor of EIMCO/Sandvik, Atlas Copco, and Robbins.[6] The Dyes stipulated with NACCO and Allis-Chalmers that they would not have to file a responsive pleading to the fourth amended complaint and that they would be bound by the results of the Dyes' first and second appeals.

*Decision on First and Second Appeals*

On November 17, 2008, this court concluded, in its consolidated opinion on the first and second appeals, that the Dyes' allegations against both the first appeal defendants and the second appeal defendants were sufficient to survive demurrer. It was also determined that the trial court abused its discretion in striking the third amended complaint as to Caterpillar. The disposition provided: "The judgments are reversed, and the case is remanded for further proceedings." Remittitur issued on January 26, 2009, and the court clerk mailed notice of its issuance that same day.

*Trial Court Proceedings After Remand*

On February 12, 2009, 17 days after issuance of the remittitur, counsel for Ingersoll Rand pointed out to the Dyes' counsel that it was no longer named as a defendant in the fourth amended complaint. On February 16, 2009, the Dyes' counsel asked the trial court to set a case management conference.

On February 26, 2009, 31 days after issuance of the remittitur, counsel for the Dyes sought to meet and confer with defendants regarding a date for the case management conference. Several of the first appeal defendants indicated to the Dyes' counsel that they would not attend a case management conference because they were not named parties in the fourth amended complaint.

On April 9, 2009, 73 days after issuance of the remittitur, the Dyes noticed a motion for leave to file a fifth amended complaint. The Dyes' motion explained: "The sole purpose of the Fifth Amended Complaint is to add back those defendants who had been dismissed as a result of the Demurrers and are thus not included in the Fourth Amended Complaint. Otherwise no new defendants are added. The proposed Fifth Amended Complaint does not

---

[6] EIMCO/Sandvik, Atlas Copco, and Robbins are hereafter referred to as "the second appeal defendants."

change any of the charging allegations or other operative pleading as to any defendant." The motion also stated: "[I]f the court finds that [section] 472(b) [*sic*] is applicable to this case, and should the proposed filing of the Fifth Amended Complaint be deemed untimely, plaintiffs request relief pursuant to . . . section 473[, subdivision] (b)." The Dyes' attorney stated, in her accompanying declaration: "Following receipt of the [r]emittiturs I was not aware of any applicable deadline for filing any amended pleading. My thought was to set the case for a case management conference in order to sort out the rather complicated pleading issues that presented on the case being remanded. Any error on my part was inadvertent. I thought leave of court would be necessary to file an amended [c]omplaint to include all the parties."

On April 15, 2009, counsel for the Dyes and counsel for the second appeal defendants appeared for a case management conference. The first appeal defendants did not appear. The case management conference was continued to May 7, 2009.

On May 7, 2009, the trial court heard the motion for leave to file a fifth amended complaint. Again, only counsel for the Dyes and counsel for the second appeal defendants appeared. The second appeal defendants opposed, as premature, the Dyes' request for relief pursuant to section 473, subdivision (b). No opposition was filed with respect to leave to file the amended complaint. However, Atlas Copco and EIMCO/Sandvik expressly reserved their rights to address the timeliness issue. The court granted the Dyes' unopposed motion for leave to amend, but did not address section 472b.

On May 14, 2009, 108 days after issuance of the remittitur, the Dyes filed their fifth amended complaint, which named Caterpillar, Gardner Denver, Allis-Chalmers, Lippmann-Milwaukee, Deister, Telsmith, Bucyrus, Terex, Cedarapids, Portec, Ingersoll Rand, EIMCO/Sandvik, Atlas Copco, Robbins, and NACCO as defendants. Other than adding back in the first appeal defendants and removing Moldex-Metric, Wix, 3M, Tumsco, Napa Valley Auto Parts, and Vallen, the fifth amended complaint mirrored the fourth amended complaint.

NACCO and Allis-Chalmers were the only defendants to answer the fifth amended complaint. Caterpillar filed a demurrer to the fifth amended complaint, arguing that it was untimely under section 472b. Specifically, Caterpillar contended: "Pursuant to [s]ection 472b, the Dyes had until February 25, 2009 to file a Fifth Amended Complaint. [The Dyes'] motion for leave to amend was finally filed on April 9, 2009 . . . and was untimely by forty-three days." Atlas-Copco, Bucyrus, Deister, Lippmann-Milwaukee, Telsmith, Terex, Cedarapids, Portec, and Gardner Denver joined in Caterpillar's motion.

Robbins also filed a motion to strike the fifth amended complaint, relying, in part, on section 472b. Having been named in the fourth amended complaint, Robbins argued that "[t]he [second appeal] defendants will be prejudiced if they are not afforded the same procedural treatment as the [first appeal] defendants." EIMCO/Sandvik filed a similar motion, in which Atlas Copco joined.

The trial court granted the motions, stating that "[section 472b] is clear on its face, and you don't have to go do any research about what's supposed to be done . . . . [¶] You're supposed to get your complaint on file, and you failed to do that . . . ." Accordingly, the trial court dismissed the action with prejudice as against Caterpillar, Terex, Cedarapids, Telsmith, Gardner Denver, Deister, Portec, Lippmann-Milwaukee, Atlas Copco, Bucyrus, EIMCO/Sandvik, and Robbins. For purposes of appeal, this dismissal order constituted a final judgment. (§ 581d [written order of dismissal signed by court constitutes judgment].)

The Dyes moved for a new trial and to set aside the dismissals pursuant to section 473, subdivision (b). The trial court denied the motions. The Dyes filed a timely notice of appeal. (See Cal. Rules of Court, rule 8.108(c); *Lamb v. Holy Cross Hospital* (1978) 83 Cal.App.3d 1007, 1010 [148 Cal.Rptr. 273].) That appeal was docketed in this court as No. A127191.

In the meantime, NACCO filed an amended answer that asserted the court lacked subject matter jurisdiction because the Dyes failed to file the fifth amended complaint within the time provided by section 472b. On October 19, 2009, the trial court heard NACCO's motion for judgment on the pleadings, which raised the same argument. The court granted NACCO's motion, concluding that "[t]he Fifth Amended Complaint was not timely filed pursuant to . . . section 472b and, therefore, the Court lacks subject matter jurisdiction . . . ."[7]

On October 27, 2009, the trial court heard Ingersoll Rand's demurrer to the Dyes' fifth amended complaint. Ingersoll Rand similarly argued that the court

---

[7] The record contains an order granting NACCO's motion. However, the court's signed order does not actually dismiss NACCO. The Dyes' attempt to appeal from a nonexistent judgment, as to NACCO, does not require dismissal. We order the trial court to enter, nunc pro tunc as of the date of the order granting NACCO's motion for judgment on the pleadings, a judgment dismissing the action as to NACCO. We then construe the Dyes' notice of appeal as referring to that judgment. (See *Donohue v. State of California* (1986) 178 Cal.App.3d 795, 800, 805 [224 Cal.Rptr. 57].)

Allis-Chalmers filed a similar motion for judgment on the pleadings, which was also granted. The Dyes state, in their opening brief, that they "chose not to attempt to make Allis-Chalmers a Respondent because Allis-Chalmers has exhausted its funds and the United States Bankruptcy Court, Southern District of New York declared it to be immune from suit . . . ."

lacked subject matter jurisdiction over the fifth amended complaint because it was filed beyond the 30-day time limit provided by section 472b. The court sustained the demurrer and dismissed Ingersoll Rand with prejudice.

The trial court denied the Dyes' motion to set aside, pursuant to section 473, subdivision (b), its dismissals of Ingersoll Rand and NACCO. The Dyes filed a timely notice of appeal. (See § 581d [written order of dismissal signed by court constitutes judgment]; Cal. Rules of Court, rule 8.108(c).) That appeal was docketed in this court as No. A127797. The two appeals were consolidated for decision.

## II. Discussion

The Dyes contend that the trial court erred in dismissing their fifth amended complaint because the 30-day time limit contained in section 472b does not apply here. In the alternative, they argue that, even if the 30-day time limit does apply, the trial court should have granted their motions for relief from dismissal, pursuant to section 473, subdivision (b). Because we agree that the 30-day time limit is not applicable, we need not address the latter argument.

It is undisputed that the Dyes' fifth amended complaint was not filed within 30 days of issuance of the remittitur. The question is whether section 472b applies to the Dyes' fifth amended complaint.[8] Accordingly, we must decide what the Legislature intended when it used the phrase "any amended complaint" in the second sentence of section 472b. Did it mean, as defendants urge in their briefs and the trial court concluded, any amended complaint, regardless of the reason for filing, after reversal of a demurrer sustained without leave to amend? Or did it mean, as the Dyes urge, only an amended complaint filed after an appellate remittitur directing a trial court to sustain a demurrer *with* leave to amend? Given the statute's legislative history, we think the latter interpretation is proper. Accordingly, because we determined in our prior opinion that the pleading allegations of the Dyes' third and fourth amended complaints were sufficient—and did not require amendment—section 472b's 30-day time limit does not apply.

### A. Standard of Review

■ The parties present an issue of statutory construction, which we review de novo. (*County of Alameda v. Pacific Gas & Electric Co.* (1997) 51 Cal.App.4th 1691, 1698 [60 Cal.Rptr.2d 187].) "The primary duty of a court

---

[8] We assume, without deciding, that defendants timely presented their section 472b objections to the fifth amended complaint.

when interpreting a statute is to give effect to the intent of the Legislature, so as to effectuate the purpose of the law. [Citation.] To determine intent, courts turn first to the words themselves, giving them their ordinary and generally accepted meaning. [Citation.] If the language permits more than one reasonable interpretation, the court then looks to extrinsic aids, such as the object to be achieved and the evil to be remedied by the statute, the legislative history, public policy, and the statutory scheme of which the statute is a part. [Citation.] . . . Ultimately, the court must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and it must avoid an interpretation leading to absurd consequences. [Citation.]" (*In re Luke W.* (2001) 88 Cal.App.4th 650, 655 [105 Cal.Rptr.2d 905].)

" ' " 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" ' [Citation.]" (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) "If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed cautiously to . . . apply 'reason, practicality, and common sense to the language at hand.' [Citation.]" (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 583 [48 Cal.Rptr.3d 340] (*Ailanto*).)

B. *Plain Language*

We begin our inquiry with the language of section 472b, which provides: "When a demurrer to any pleading *is sustained or overruled, and time to amend or answer is given*, the time so given runs from the service of notice of the decision or order, unless the notice is waived in open court, and the waiver entered in the minutes. When an order sustaining a demurrer *without leave to amend* is reversed or otherwise remanded by any order issued by a reviewing court, *any amended complaint shall be filed within 30 days* after the clerk of the reviewing court mails notice of the issuance of the remittitur." (Italics added.)

In their appellate briefs, defendants contend that the language of section 472b is unambiguous. According to defendants, the analysis is simple. Here, the trial court sustained demurrers to both the third and fourth amended complaints without leave to amend. This court then reversed those orders and mailed notice of issuance of the remittitur on January 26, 2009. Thus, "any amended complaint" to be filed thereafter needed to be filed within 30 days, or by February 25, 2009.

Defendants concede that this court, in its prior opinion, did not direct the Dyes to file an amended complaint. But, they assert that section 472b's phrase "any amended complaint" is broad enough to apply to the fifth amended complaint. When this language is viewed by itself, it is difficult to quarrel with defendants' argument that "[n]othing in the language of [s]ection 472b limits its application only to situations where a plaintiff is *required* to file an amended complaint after reversal." According to defendants, "[h]ad the Legislature meant to limit application of [section] 472b to cases where an amended complaint would *necessarily* be filed (e.g.[,] where the reviewing court deems the complaint insufficient but leave to amend appropriate), it might have used language like '*the* amended complaint' or '*an* amended complaint.' The Legislature did not. If a plaintiff files an amended complaint after the remittitur issues—out of necessity, preference, strategic consideration, or some combination—the statute requires that the amended complaint be filed within 30 days so that the case can proceed."

But, the second sentence of section 472b is only unambiguous when it is read in isolation. When the second sentence of section 472b is read in the context of section 472b as a whole, it is susceptible to another interpretation. "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; accord, *Mason v. Retirement Board* (2003) 111 Cal.App.4th 1221, 1229 [4 Cal.Rptr.3d 619] ["[w]e do not interpret statutes . . . in isolation"]; *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741] ["[s]tatutory language which seems clear when considered in isolation may in fact be ambiguous or uncertain when considered in context"].) Further, we do not adopt a literal interpretation that would result in absurd consequences the Legislature did not intend. (*Ailanto, supra*, 142 Cal.App.4th at p. 582.)

The first sentence of section 472b provides: "When a demurrer to any pleading *is sustained or overruled, and time to amend or answer is given*, the time so given runs from the service of notice of the decision or order . . . ." Thus, the first sentence of section 472b recognizes (1) that when a demurrer to a complaint is sustained, the court may grant leave to amend and (2) that when a demurrer to a complaint is overruled, an answer should be filed. This is consistent with other provisions of the Code of Civil Procedure. (See

§§ 472a, subd. (b) ["when a demurrer to a complaint or to a cross-complaint *is overruled* and there is no answer filed, *the court shall allow an answer to be filed* upon such terms as may be just" (italics added)], 472a, subd. (c) ["[w]hen a demurrer is *sustained,* the court *may grant leave to amend* the pleading upon any terms as may be just and shall fix the time within which the amendment or amended pleading shall be filed" (italics added)].)

One could reasonably view this understanding—that an answer will generally follow an overruled demurrer and that an amended complaint may follow a demurrer sustained with leave to amend—as implicitly modifying the express language of the second sentence of section 472b. Given the context, we think "any amended complaint" in the second sentence of section 472b could refer only to an amended complaint directed to be filed when a reviewing court directs a trial court to *sustain* a demurrer *with* leave to amend. Under this interpretation, the Legislature's use of the word "any" reflects the fact that a plaintiff may elect to forgo amendment.

We conclude the language of section 472b is ambiguous because it is susceptible to both the Dyes' and defendants' argued constructions.

C. *Pagarigan v. Aetna U.S. Healthcare of California, Inc.*

Defendants contend that the Second District Court of Appeal, in *Pagarigan v. Aetna U.S. Healthcare of California, Inc.* (2007) 158 Cal.App.4th 38 [69 Cal.Rptr.3d 627] (*Pagarigan*), adopted their interpretation of the statute.[9] In *Pagarigan,* the plaintiffs sued a nursing home and several entities that operated a health maintenance organization (HMO), claiming that their mother's death was caused by poor medical care. (158 Cal.App.4th at p. 40.) The HMO-affiliated defendants and the nursing home filed separate demurrers to the complaint. The trial court sustained the demurrers, without leave to amend, in separate orders. The plaintiffs' appeals were not consolidated. (*Ibid.*)

With respect to the demurrer filed by the HMO-affiliated defendants, the Court of Appeal reversed and remanded with instructions to sustain the demurrer with leave to amend as to several causes of action and to sustain the demurrer without leave to amend on the remaining causes of action. (*Pagarigan, supra,* 158 Cal.App.4th at p. 40.) On February 17, 2006, the appellate court clerk mailed notice of the issuance of the remittitur. Meanwhile, the appeal relating to the nursing home's demurrer remained pending. (*Id.* at p. 41.) For about six weeks after remand, nothing happened. Then, the

---

[9] We have found no published opinion other than *Pagarigan* which has addressed the second sentence of section 472b.

HMO-affiliated defendants filed a motion to dismiss. They asked the trial court to dismiss the plaintiffs' case against them because the plaintiffs had violated section 472b by not filing an amended complaint within 30 days after remand. The plaintiffs opposed the motion and moved to stay the case, pointing out that the case against the nursing home remained on appeal. The trial court granted the motion to dismiss and denied the plaintiffs' subsequent motion for relief under section 473, subdivision (b). (158 Cal.App.4th at p. 41.)

On appeal, the *Pagarigan* court first concluded that the motion to dismiss was properly granted, reasoning as follows: "[Section 472b] is on point. One can tell by comparing the statute's words to the events at bar. . . . The trial court entered an order sustaining [the] demurrer without leave to amend. This court reviewed that order and remanded the matter to the trial court. . . . [¶] The plain language of . . . section 472b sets a deadline. Plaintiffs did not meet it." (*Pagarigan, supra*, 158 Cal.App.4th at p. 42.) The court rejected the plaintiffs' argument that the 30-day deadline was inapplicable because it conflicted with the prior appellate opinion, which instructed the trial court " 'to sustain the demurrer with leave to amend as to the first and eleventh causes of action . . . and to sustain the demurrer without leave to amend as to the remaining counts.' " (*Ibid.*) The court determined no conflict existed, noting: "section 472b sets out a procedural timeline. The appellate opinion set out substantive requirements. The substantive requirements could have been met within the procedural timeline. . . . Once this 30-day clock began to tick, it would have been straightforward for the [plaintiffs] to file an appropriate pleading. This pleading could have been, for instance, a motion (1) to enter an order sustaining Aetna's demurrer as the Court of Appeal had directed, and (2) for leave to file an appropriately amended complaint. Such a pleading . . . would have kept this case moving forward, which is the aim of section 472b." (*Id.* at pp. 42–43.)

The *Pagarigan* court also rejected the plaintiffs' argument that discretionary relief was appropriate, pursuant to section 473, subdivision (b), noting: "[T]he [plaintiffs'] mistake of law was unreasonable. . . . The statute is clear." (*Pagarigan, supra*, 158 Cal.App.4th at p. 44.) The reviewing court also noted an alternative basis for denying discretionary relief—the plaintiffs' inaction after remand appeared to be intentional and not due to mistake, inadvertence, surprise, or neglect. The court noted: "The [plaintiffs'] attorney also had an objectively strategic reason for his [in]action. He wanted a stay. Objectively, his unreasonable 'mistake' of law would serve his strategic goal by giving him supplemental time 'not available to practitioners who follow the rules . . . .' [Citation.] Under these circumstances, it was reasonable for the trial court to suggest that the [plaintiffs'] actions were deliberate rather than inadvertent. . . . Designing conduct is not mistake, inadvertence, surprise, or neglect. [Citation.]" (*Id.* at p. 45.) The court also concluded that relief was not

appropriate under the mandatory provision of section 473, subdivision (b), because "[d]esigning conduct that leads to a dismissal is not akin to a default." (158 Cal.App.4th at p. 46.) Accordingly, the trial court's orders were affirmed. (*Ibid.*)

*Pagarigan* is distinguishable. In *Pagarigan*, the Court of Appeal concluded that the plaintiffs' allegations were deficient and that the HMO-affiliated defendants' demurrer should have been sustained, at least in part, with leave to amend. (*Pagarigan, supra*, 158 Cal.App.4th at p. 40.) Thus, *Pagarigan* is not inconsistent with the Dyes' contention that section 472b's 30-day time limit only applies when a reviewing court directs the trial court to sustain a demurrer with leave to amend.

Here, in contrast, our prior opinion indicated that the Dyes' allegations were sufficient to withstand demurrer, and the demurrers should not have been sustained in the first instance. Although the dispositional language did not expressly state that, on remand, the trial court was directed to overrule the demurrers to the third and fourth amended complaints, the opinion as a whole compels that result. The *Pagarigan* court did not speak to section 472b's application to this situation.

D. *Legislative History*

To resolve the ambiguity present in section 472b and left unaddressed by *Pagarigan*, we turn to other indications of legislative intent. We think the legislative history makes clear that the Legislature intended the 30-day time limit to apply only when a reviewing court directs a trial court to sustain a demurrer with leave to amend.

Section 472b's 30-day time limit was enacted in 1994 as Assembly Bill No. 911 (1993–1994 Reg. Sess.) (hereafter, Assembly Bill 911). The legislative history of Assembly Bill 911 repeatedly states: "The purpose of this bill is to specify a clear time frame and procedure for filing an amended complaint when an appellate court overturns or remands a lower court's order sustaining the demurrer." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 911 (1993–1994 Reg. Sess.) as amended Jan. 3, 1994, p. 2; Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 911 (1993–1994 Reg. Sess.) Mar. 17, 1994, p. 1.) This statement of purpose, however, provides no more clue to the intended scope of the 30-day time limit than the words of section 472b themselves.

Like the 1994 amendment to section 472b itself, the description of that amendment in the legislative history contains no language facially restricting the 30-day time limit to only a subset of amended complaints (e.g., those filed

in response to a reviewing court's direction to the trial court to sustain a demurrer with leave to amend). However, the change made by Assembly Bill 911 was deemed "not controversial." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 911 (1993–1994 Reg. Sess.) as amended Jan. 3, 1994, p. 1.)

Defendants concede that, under the trial court's interpretation, section 472b would bar any amendment of the Dyes' complaint for the remaining duration of the litigation. Thus, even if the Dyes had filed their fifth amended complaint within 30 days, they would be precluded from filing a sixth amended complaint if three months later further amendment was necessitated by, for example, discovery of new information. Were that the legislative intent, we cannot imagine that such a proposal would have been considered "not controversial." (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2010) ¶ 6:636, p. 6-162 (rev. # 1, 2010) [leave to amend the pleadings *at any stage of the action*" may be granted: "[t]ypically, a party will discover the need to amend after all pleadings are completed . . . , and *new information* requires a change in the nature of the claims or defenses previously pleaded" (italics added & omitted)]; see also § 473, subd. (a)(1) ["[t]he court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading . . ."]; § 576 ["[a]ny judge, at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading . . ."]; *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 296 [216 Cal.Rptr. 443, 702 P.2d 601] [even on the eve of trial, "there is a strong policy in favor of liberal allowance of amendments"].)

It is also noteworthy that Assembly Bill 911 was amended by the Senate on March 17, 1994. It was only then that the second sentence of section 472b first appeared in its current form. (Compare Sen. Amend. to Assem. Bill No. 911 (1993–1994 Reg. Sess.) Mar. 17, 1994, with Assem. Amend. to Assem. Bill No. 911 (1993–1994 Reg. Sess.) Jan. 3, 1994.) On March 17, 1994, the bill text was revised to read: "When *an order sustaining a demurrer without leave to amend* is reversed or otherwise remanded by any order issued by a reviewing court, any amended complaint shall be filed within 30 days after the clerk of the reviewing court mails notice of the issuance of the remittitur." (Sen. Amend. to Assem. Bill No. 911 (1993–1994 Reg. Sess.) Mar. 17, 1994, italics added.) Before that date, the bill had proposed the following addition to section 472b: "When *an order sustaining a demurrer* is reversed or otherwise remanded by any order issued by a reviewing court, any amended complaint shall be filed within 30 days after the clerk of the reviewing court mails notice of the remittitur." (Assem. Amend. to Assem. Bill No. 911 (1993–1994 Reg. Sess.) Jan. 3, 1994.) Thus, "[t]he Senate amendments clarif[ied] that the bill applies in situations when a demurrer [sustained] *without leave to amend* is reversed or remanded by a reviewing court." (Assem. Floor Analysis, Conc. in Sen. Amends. to Assem. Bill

No. 911 (1993–1994 Reg. Sess.) as amended Mar. 17, 1994, italics added.) It follows that the bill was not intended to apply when an order sustaining a demurrer with leave to amend is reversed or remanded.

An order sustaining a demurrer with leave to amend is not itself appealable. But, a plaintiff who elects not to amend his or her complaint may obtain review by appeal from the ultimate order of dismissal. (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312 [40 Cal.Rptr.3d 313]; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 611 [107 Cal.Rptr.2d 489].) When such an order is reversed by a reviewing court, the trial court is instructed to overrule the demurrer. (See, e.g., *Pentz v. Kuppinger* (1973) 31 Cal.App.3d 590, 591–592, 598 [107 Cal.Rptr. 540].) Had the Legislature intended the 30-day time limit to apply when a trial court is instructed to overrule a demurrer, it would not have been necessary to amend the proposed statutory language in the fashion that it did.

Furthermore, the problem that the Legislature sought to solve is very different from that presented in the ordinary case in which a reviewing court directs the trial court to overrule a demurrer. In sponsoring Assembly Bill 911, the State Bar argued: "[T]he plaintiff should be given 30 days to file an amended pleading after an appellate court reverses a lower court's ruling. Because no rule or statute currently governs this situation, 'the parties have no idea when *the amended complaint* must be filed. In some instances, months go by before the trial court realized what has happened. And, since there is no way of determining when *the amended complaint* must be filed, *a defendant's* only recourse is to bring the matter to [the] trial court's attention, and request a date certain for an amended complaint to be filed' [¶] . . . AB 911 would eliminate this 'guesswork.' " (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 911 (1993–1994 Reg. Sess.) as amended Jan. 3, 1994, p. 2, italics added.)

Thus, contrary to defendants' assertion, the Legislature does not appear to have considered a broad mandate "to keep cases moving forward after they are remitted from the court of appeal." Rather, it appears the Legislature was considering only the state of legal limbo that would result when a reviewing court reverses with instructions to the trial court to sustain a demurrer *with leave to amend*. It is in this situation that a defendant was left without immediate recourse—there being no operative complaint on file. In the typical case in which a reviewing court reverses and directs the trial court to overrule a demurrer, the ball is then in the defendant's court. Although section 472b does not address when a defendant must *answer* a complaint deemed sufficient on appeal, a defendant usually has 10 days to answer a complaint once a demurrer is overruled. (Cal. Rules of Court, rules 3.1320(g) ["[f]ollowing a ruling on a demurrer, unless otherwise ordered, leave to answer or

amend within 10 days is deemed granted . . ."], 3.1320(j)(1) ["[u]nless otherwise ordered, defendant has 10 days to answer or otherwise plead to the complaint or the remaining causes of action following . . . [¶] . . . [t]he overruling of the demurrer . . ."].)

The somewhat unique circumstances of this case do not alter our interpretation of the statutory language. Defendants impliedly concede that the Dyes were not required to file an amended complaint on remand. But, the first appeal defendants assert that "the procedural circumstances *required* that the Dyes file an amended pleading if they wished to pursue this litigation against [them]." The first appeal defendants point out that the third amended complaint was no longer at issue and they "*could not* file answers to the Fourth Amended Complaint because [they] *were not named parties* [therein]."[10] (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362] [" '[i]t is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading' "]; *Cohen v. Superior Court* (1966) 244 Cal.App.2d 650, 656 [53 Cal.Rptr. 378] ["it is elementary that there can only be *one* complaint in an action . . ."].)[11]

Because the procedural circumstances present in this case are unique, the first appeal defendants argue that we need not decide "the full scope of [s]ection 472b's application." According to the first appeal defendants, the fifth amended complaint "*was* directly related" to the result the Dyes obtained on appeal because they used it to " 'add back' " the defendants who were not named in the fourth amended complaint. At oral argument the first appeal defendants argued that "any amended complaint" means "any amended complaint that flows from the court of appeal's opinion" or "any amended complaint related to the appeal." We are not persuaded. We see no evidence, in the plain language or the legislative history, that the Legislature intended

---

[10] There was, of course, a fully operative pleading (the fourth amended complaint) then on file as to the second appeal defendants.

[11] Defendants are correct that "[i]t has long been the rule that an amended complaint that omits defendants named in the original complaint operates as a dismissal [without prejudice] as to them. [Citations.]" (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1142 [8 Cal.Rptr.3d 446].) But, at the time the Dyes filed their fourth amended complaint, the first appeal defendants had already been dismissed *with prejudice* by the trial court's May 15, 2006 order. Thus, the first appeal defendants are wrong when they assert that the Dyes "chose to amend the [third amended] complaint and removed [the first appeal defendants] . . . ." The filing of the fourth amended complaint could not dismiss, without prejudice, defendants who had already been dismissed with prejudice. None of the cases relied on by defendants provide otherwise. (*Lamoreux v. San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617 [311 P.2d 1]; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc., supra,* 114 Cal.App.4th 1135; *Kuperman v. Great Republic Life Ins. Co.* (1987) 195 Cal.App.3d 943 [241 Cal.Rptr. 187].)

either meaning.[12] Adopting such an interpretation would also undoubtedly create additional uncertainty and ambiguity, and lead to disputes over when an amendment "flows from" the appellate decision or is "related to" the appeal.

### E. *Conclusion*

The trial court explained its interpretation of section 472b as follows: "[T]his court did not tell you, nor did the Court of Appeal make any reference to an amended complaint. What does make reference to the amended complaint, is 472(B) [*sic*]. 472(B) [*sic*] specifically says, when an order sustaining a demurrer without leave to amend is reversed or otherwise remanded by any order issued by a reviewing Court. Then it goes on and says, any amended complaint. [¶] . . . [¶] And what happens in this instance is you filed an amended complaint. [¶] . . . [¶] The Court's interpretation, and I think the argument on this has been, that you decided to file an amended complaint. If you wanted to file the amended complaint, you should have done it within 30 days."

We believe the broad construction adopted by trial court would lead to absurd results not contemplated by the Legislature. Accordingly, we agree with the Dyes that section 472b's 30-day time limit only applies when a reviewing court directs the trial court to sustain a demurrer with leave to amend. Our conclusion is consistent with the statute's legislative history and the *Pagarigan* court's observation that "section 472b sets out a procedural timeline[, while] [t]he appellate opinion set[s] out substantive requirements." (*Pagarigan, supra,* 158 Cal.App.4th at pp. 42–43.)

Because this court's prior opinion did not direct the trial court to sustain defendants' demurrers to the third and fourth amended complaints with leave to amend, we conclude that the 30-day time limit did not apply. The trial court erred when it entered dismissal orders in favor of defendants. Accordingly, we need not consider relief under section 473, subdivision (b), or whether failure to comply with the 30-day time limit results in a loss of subject matter jurisdiction.

---

[12] Defendants are also incorrect in their assertion that the "procedural quagmire" here was of the Dyes' own making. In support of that argument, they claim that the fifth amended complaint was necessary because it was the Dyes "who elected to divide the [d]efendants into two appeal groups . . . rather than stipulate that the [second appeal defendants] be bound by the outcome of the [first] appeal." The record does not support this contention. Even if the Dyes had so stipulated, the result would have been the same. The trial court not only sustained the first appeal defendants' demurrers to the third amended complaint without leave to amend, but also sustained the demurrers of Moldex-Metric, Vallen, and 3M with leave to amend. The Dyes filed the fourth amended complaint in response to this ruling. Thus, there is no evidence that a stipulation to treat the second appeal defendants as if they were bound by the outcome of the first appeal "would have avoided any post-remittitur confusion . . . ."

### III. DISPOSITION

The dismissal orders are reversed. The trial court is directed to vacate its orders of August 20, 2009, and October 27, 2009, and to enter new and different orders overruling the demurrers and denying the motions to strike and NACCO's motion for judgment on the pleadings. The Dyes shall recover their costs on appeal.

Jones, P. J., and Simons, J., concurred.