[No. H034994. Sixth Dist. Jan. 26, 2011.]

HERITAGE RESIDENTIAL CARE, INC., Plaintiff and Appellant, v. DIVISION OF LABOR STANDARDS ENFORCEMENT et al., Defendants and Respondents.

**COUNSEL**

Tandoc & Wehr and Jeffrey D. Wehr for Plaintiff and Appellant.

Anne Hipshman for Defendants and Respondents.

## OPINION

**McADAMS, J.**—At issue in this appeal is a civil penalty, assessed under Labor Code section 226.3, for appellant's failure to provide itemized wage statements to all of its employees as statutorily required. Appellant unsuccessfully challenged the penalty below, first at an administrative hearing and later in the trial court, arguing that its noncompliance was inadvertent within the meaning of the statute and that respondent erred in determining otherwise. Appellant renews those arguments here.

Interpreting the pertinent statutory language as a matter of first impression, we conclude that the statute's references to "inadvertent" violations offer no grounds for setting aside the penalty assessed against appellant. We therefore affirm the judgment.

## BACKGROUND

The parties to this appeal are Heritage Residential Care, Inc. (appellant), and the Division of Labor Standards Enforcement (respondent, sometimes referred to herein as DLSE or Labor Commissioner). The facts, which are undisputed, are taken from the findings in respondent's administrative decision.

*Appellant's Business Operation*

Appellant operates seven residential care facilities. During the relevant time period, appellant employed 24 workers, of whom 16 lacked Social Security numbers. Appellant treated those 16 workers as independent contractors, issuing them form 1099 federal income tax statements instead of the itemized wage statements required by section 226, subdivision (a), of the Labor Code.[1]

*Citation; Subpoena*

In October 2008, respondent's agent, Margaret Flanders, performed a workplace inspection of appellant's premises. Based on evidence that appellant had failed to provide all of its employees with itemized wage statements during the past year, Flanders issued appellant a citation for violating section 226(a). The citation included a civil penalty under section 226.3, in the amount of $72,000, representing 288 violations at $250 per violation.

In December 2008, respondent issued a subpoena duces tecum for further documentation, including payroll records. Appellant complied with the subpoena. Based on the records provided, Flanders determined that there had

---

[1] Unspecified statutory references are to the Labor Code. For simplicity, we hereafter use the shorthand designation "226(a)" when referring to section 226, subdivision (a).

been a total of 504 violations during the past year, rather than the 288 violations reflected in the citation. Nevertheless, Flanders elected not to amend the citation.

*Administrative Hearing*

Appellant requested an administrative hearing, which was held in January 2009.

At the hearing, respondent appeared through Flanders, who testified and submitted a number of exhibits demonstrating the basis for the citation. Appellant appeared through William Gardner, who testified and argued on appellant's behalf. Gardner explained that a number of appellant's employees "do not hold a social security number. So consequently we treat them as independent contractors or outside service and issue 1099s at the end of the year" rather than itemized wage statements. At the conclusion of the hearing, the hearing officer took the matter under submission.

The following day, respondent affirmed the citation in a written decision, denominated "findings and orders." As relevant here, respondent rejected appellant's argument that its noncompliance was inadvertent and respondent therefore concluded that "there is no basis for exercising discretion to reduce or eliminate the penalty assessment for failure to provide itemized wage statements."

*Mandamus Petition*

In February 2009, appellant filed a petition for writ of administrative mandamus in Santa Clara County Superior Court.

In September 2009, the court conducted a hearing on the petition. The court thereafter issued a formal order denying the petition.

In November 2009, the court entered judgment in respondent's favor.

*Appeal*

Appellant brought this timely appeal. Appellant contends that respondent misconstrued section 226.3. Appellant further contends that respondent failed "to examine inadvertence as required" by that provision, thereby abusing its discretion. Alternatively, appellant contends that a "mitigated penalty assessment" is supported by the evidence.

For its part, respondent maintains that substantial evidence supports the administrative decision, that it correctly defined inadvertence for purposes of section 226.3, and that it properly exercised its discretion in determining the amount of the penalty.

## DISCUSSION

To establish the proper framework for analyzing these issues, we begin by setting forth the governing legal principles.

I.  *Legal Principles*

A.  *The Statutory Framework*

As part of a comprehensive statutory scheme governing the payment of wages, the Legislature has enacted various provisions concerning itemized wage statements, which are codified in the Labor Code at sections 226 through 226.6. Two of those provisions are of interest here. The first is section 226(a), which requires employers to provide employees with wage statements. The second is section 226.3, which permits civil penalties for noncompliance.

1.  *Wage Statement Requirement*

█ Employers are required to provide itemized wage statements to employees, containing specified information, all as set forth in section 226(a).[2] The requirement is mandatory. (§ 15 ["shall" is mandatory].) An employer's failure to comply constitutes a statutory violation. (§ 22 [noncompliance with any Lab. Code provision constitutes a violation]; see *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961 [35 Cal.Rptr.3d 243] [statutory requirement of itemized wage statement was violated; statements and driver trip summaries did not list the employer's name and address and

---

[2] Section 226(a) reads in full as follows: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California."

did not show how many hours driver worked]; *Brewer v. Premier Golf Properties, LP* (2008) 168 Cal.App.4th 1243, 1249 [86 Cal.Rptr.3d 225] [statutory requirement was violated; substantial evidence supported jury finding that employer did not pay employee wages for all of the hours that she actually worked and thus "did not give her accurate itemized wage statements"]; *Elliot v. Spherion Pacific Work, LLC* (2008) 572 F.Supp.2d 1169, 1179 [statutory requirement was not violated; "the wage statements provided" were satisfactory; as allowed under the statute, they contained plaintiff's employee number instead of her Social Security number].)

### 2. *Civil Penalties for Violation*

■ "When proven, Labor Code violations give rise to civil penalties." (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1195 [78 Cal.Rptr.3d 572].) "Imposition of civil penalties has, increasingly in modern times, become a means by which legislatures implement statutory policy." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512]; see *Starving Students, Inc. v. Department of Industrial Relations* (2005) 125 Cal.App.4th 1357, 1367 [23 Cal.Rptr.3d 583].)

For employers who violate section 226(a), civil penalties are assessed as provided in section 226.3. As relevant to this appeal, that provision states: "In enforcing this section, the Labor Commissioner shall take into consideration whether the violation was *inadvertent*, and in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or *inadvertent* mistake." (§ 226.3, italics added.)[3]

In this case, the parties dispute whether appellant's admitted failure to provide itemized wage statements to 16 of its workers was "inadvertent" within the meaning of section 226.3. That dispute presents a question of statutory interpretation.

### B. *General Principles of Statutory Construction*

■ In interpreting a statute, our primary task is determining legislative intent. (*Van Horn v. Watson* (2008) 45 Cal.4th 322, 326 [86 Cal.Rptr.3d 350,

---

[3] The full text of section 226.3 reads as follows: "Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. The civil penalties provided for in this section are in addition to any other penalty provided by law. In enforcing this section, the Labor Commissioner shall take into consideration whether the violation was inadvertent, and in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake."

197 P.3d 164].) In doing so, we "look first to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent.' " (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284]; see *Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1262 [116 Cal.Rptr.3d 1].) Where a statutory term "is not defined, it can be assumed that the Legislature was referring to the conventional definition of that term." (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1176 [39 Cal.Rptr.3d 788, 129 P.3d 1]; see *Manson v. Shepherd*, at p. 1262.) We thus give the words in a statute "their plain and commonsense meaning." (*Murphy v. Kenneth Cole Productions, Inc.*, at p. 1103.) "Furthermore, a particular clause in a statute must be read in harmony with other clauses and in the context of the statutory framework as a whole." (*Esther B. v. City of Los Angeles* (2008) 158 Cal.App.4th 1093, 1099 [70 Cal.Rptr.3d 596].) ■ Additionally, "statutes governing conditions of employment are to be construed broadly in favor of protecting employees." (*Murphy v. Kenneth Cole Productions, Inc.*, at p. 1103.)

Statutory construction presents a question of law, which we review de novo. (*Van Horn v. Watson, supra*, 45 Cal.4th at p. 326, fn. 5; *Wright v. Issak* (2007) 149 Cal.App.4th 1116, 1120 [58 Cal.Rptr.3d 1].) "While the DLSE's construction of a statute is entitled to consideration and respect, it is not binding and it is ultimately for the judiciary to interpret this statute." (*Murphy v. Kenneth Cole Productions, Inc., supra*, 40 Cal.4th at p. 1105, fn. 7.)

## II.  *Analysis*

With those principles in mind, we analyze the issues presented here. First, we construe section 226.3. Next, we address appellant's contention that respondent misapplied the statute.

### A.  *Construction of Section 226.3*

■ Section 226.3 requires the Labor Commissioner to "take into consideration whether the violation was inadvertent" and permits respondent to "decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake." As parties both acknowledge, the statute envisions a two-part analysis: first, a *mandatory* consideration of whether the violation was inadvertent; second, if inadvertence is found, a *discretionary* decision about whether to penalize a first violation. The parties disagree on the meaning of the statutory term "inadvertent."[4] As

---

[4] Appellant also discusses the statutory term "first violation," asserting that it means "initial citation." Because resolution of that assertion is unnecessary to a decision in this appeal, we need not and do not address it.

noted, resolving that dispute requires us to engage in statutory construction. We undertake that task de novo. (*Van Horn v. Watson, supra,* 45 Cal.4th at p. 326, fn. 5.)

### 1. *Defining the Term "Inadvertent" for Purposes of Section 226.3*

■ The word "inadvertent" is not defined in the Labor Code, nor are we aware of any cases discussing its meaning in the context of section 226.3. "In the absence of a statutory definition, and there is none, or in the absence of an adjudicated definition, and we have found none, we must turn to the general principle that in the construction of a statute, words or phrases are construed according to the context and approved usage of language." (*Goodhew v. Industrial Acc. Com.* (1958) 157 Cal.App.2d 252, 256 [320 P.2d 515].)

We thus give the statutory term its "plain and commonsense meaning." (*Murphy v. Kenneth Cole Productions, Inc., supra,* 40 Cal.4th at p. 1103.) "When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122 [29 Cal.Rptr.3d 262, 112 P.3d 647]; accord, *Manson v. Shepherd, supra,* 188 Cal.App.4th at p. 1262.)

### 2. *The Ordinary Meaning of "Inadvertent" as Reflected in Dictionary Definitions*

As dictionary definitions reflect, the ordinary meaning of inadvertent is unintentional or not deliberate. The Merriam-Webster Online Dictionary defines inadvertent as "unintentional." (Merriam-Webster's Online Dict. (2011) <http://www.merriam-webster.com/dictionary> [as of Jan. 26, 2011] "inadvertent," definition No. 2, capitalization omitted.) According to that same source, antonyms include "deliberate" and "intentional" while "near antonyms" include "knowing" and "willful (or wilful)." (*Ibid.*) The Oxford Online Dictionary defines inadvertent as "[c]haracterized by want of attention or taking notice; hence, unintentional." (Oxford English Dict. Online (2011) <http://www.oed.com> [as of Jan. 26, 2011].) Black's Law Dictionary defines inadvertence as an "accidental oversight; a result of carelessness." (Black's Law Dict. (9th ed. 2009) p. 827; see also, e.g., Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 586 ["not focusing the mind on a matter," "inattentive," "unintentional"].)

■ We adopt the ordinary, commonplace meaning of "inadvertent" reflected in these dictionary definitions. (*Wasatch Property Management v. Degrate, supra,* 35 Cal.4th at pp. 1121–1122; *Manson v. Shepherd, supra,* 188 Cal.App.4th at p. 1262.) We therefore conclude that the word "inadvertent," as used in section 226.3, means "unintentional," "accidental," or "not deliberate."

Appellant argues that the statute comprises a "state of mind" requirement that is "analogous to *mens rea* in the criminal law." As appellant points out, some Labor Code penalties are imposed only for "willful" or "knowing" violations. (*Amaral v. Cintas Corp. No. 2, supra,* 163 Cal.App.4th at p. 1195, citing §§ 203, 226, subd. (e).) Based on this authority, appellant asserts: "Inadvertence, like 'willfully and knowingly,' thus relates to a mental state, and not to a physical action in isolation."

■ We reject appellant's argument, for several reasons. First, it rests on the faulty premise that the antithetical concept—willfulness—necessarily requires a particular mental state. "The word 'wilful' is used in different statutes with various shades of meaning." (*Goodhew v. Industrial Acc. Com., supra,* 157 Cal.App.2d at p. 256; accord, *Amaral v. Cintas Corp. No. 2, supra,* 163 Cal.App.4th at p. 1203, fn. 21.) In some Labor Code contexts, willfulness simply denotes an employer's failure to perform a required act. (See § 4554; *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 781 [125 Cal.Rptr.2d 804] [discussing § 203].) Even in penal statutes, willfulness generally requires "only that the illegal act or omission occur 'intentionally,' without regard to motive or ignorance of the act's prohibited character." (*Hale v. Morgan, supra,* 22 Cal.3d at p. 396.) Second, and more to the point, the very meaning of the word "inadvertent" undercuts appellant's argument. Since the word denotes the *absence* of deliberation or intent, logically, no particular mental state is required. That conclusion is bolstered by the statute's companion phrase "clerical error." (§ 226.3 [Labor Commissioner has discretion to reduce penalty in case of "a clerical error or inadvertent mistake"].) Like inadvertence, clerical error denotes behavior that is accidental, not deliberate. (See *People v. Ramirez* (1972) 27 Cal.App.3d 660, 666 [104 Cal.Rptr. 102] [Legislature made a clerical error in enacting statute by mistakenly omitting a comma]; *In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 852 [91 Cal.Rptr.3d 475] [a court makes a clerical error when the form of a judgment does not coincide with its substance].) Inadvertence thus denotes no particular mental state.

Having given the term a plain-language construction, our task of statutory interpretation properly ends here. (*Murphy v. Kenneth Cole Productions, Inc., supra,* 40 Cal.4th at p. 1103.) We nevertheless extend our discussion below, examining the use of the term "inadvertent" in other contexts. We do so to fully address the parties' arguments on this point and to provide further support for our conclusion. But we do so cautiously, cognizant that a word may have different meanings in different contexts. (See *Amaral v. Cintas Corp. No. 2, supra,* 163 Cal.App.4th at p. 1203, fn. 21.)

### 3. *The Meaning of "Inadvertent" as Gleaned from Its Use in Other Contexts*

In legal authorities, the meaning of the term "inadvertent" typically is explained by way of contradistinction to its antonyms, such as deliberate and intentional, or its near antonyms, willful and knowing.

Labor Code jurisprudence provides some examples. In a case involving section 4554, which imposes penalties for willful failure to secure workers' compensation payment, one court found it "reasonable to assume that the Legislature did not intend that such penalty be so imposed upon an employer who failed to secure payment of compensation merely through *ignorance or inadvertence*, but on the other hand, did intend that such penalty be imposed in case the failure was *conscious, intentional and deliberate*." (*Goodhew v. Industrial Acc. Com., supra,* 157 Cal.App.2d at pp. 256–257.) As the court also found, "the uncontraverted evidence showed that the employer intentionally and deliberately failed to secure coverage as to its corporate officers although it had knowledge that such coverage was required by law," and thus the corresponding statutory penalty ("increased compensation") was proper. (*Id.* at p. 257.) Another example of definition by differentiation appears in regulations cited by appellant. (Cal. Code Regs., tit. 8, § 334, subd. (e) [employer's safety violation is willful where it is "intentional and knowing, as contrasted with inadvertent"].)

Moving beyond the labor context, appellant analogizes to case law decided under Code of Civil Procedure section 473, which permits relief from default in cases of "mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., § 473, subd. (b).) To the extent that the analogy is apt, we observe that courts construing that provision have distinguished intentional or deliberate conduct from inadvertence. (See, e.g., *Pagarigan v. Aetna U.S. Healthcare of California, Inc.* (2007) 158 Cal.App.4th 38, 45 [69 Cal.Rptr.3d 627] [record supported inference that the plaintiffs' "actions were deliberate rather than inadvertent"]; cf. *Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1009 [32 Cal.Rptr.3d 202] [mandatory relief was available to client where attorney's "failure to answer was not accidental or inadvertent, but was the calculated result of his mistaken suppositions"].)

The same distinction between inadvertent and deliberate conduct has been made in other contexts, ranging from judicial decisions to legislation to property disputes. (See, e.g., *In re McGee* (1951) 37 Cal.2d 6, 9 [229 P.2d 780] [court's "failure to provide for the recovery of costs" was not an exercise of judicial judgment but instead "was inadvertent; that matter was simply overlooked"]; *Van Horn v. Watson, supra,* 45 Cal.4th at p. 336 (conc. & dis. opn. of Baxter, J.) [legislative word choice "was not inadvertent, but purposeful"]; *In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 191

[86 Cal.Rptr.3d 624] [evidence supported "the conclusion that the form of title was not inadvertent, but rather that the parties expressly intended such a result"].)

The foregoing authority thus serves to bolster our conclusion that the term "inadvertent," as used in section 226.3, carries its ordinary meaning of "unintentional," "accidental," or "not deliberate."

## B. *Application of Section 226.3*

Having defined the term "inadvertent" for purposes of section 226.3, we next consider appellant's claim that respondent misapplied the statute. Because the facts surrounding this claim are undisputed, it presents a question of law for our independent review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *McDonald v. Department of Motor Vehicles* (2000) 77 Cal.App.4th 677, 681 [91 Cal.Rptr.2d 826].)

### 1. *Procedural Context*

At the administrative hearing, appellant's representative Gardner explained that employees without Social Security numbers were not given itemized wage statements but instead were treated "as independent contractors" and issued "1099s at the end of the year." Citing his experience with federal tax authorities, Gardner further explained that where an employee lacks a Social Security number, "we can't withhold anything." And since no federal tax was withheld, no wage statement was given. Upon questioning by the hearing officer, Gardner acknowledged that appellant likewise had not taken any state deductions from the affected employees' wages.

During a discussion in which the hearing officer explained that wage statements are required regardless of the presence or absence of Social Security numbers, Gardner stated: "This was . . . more ignorant on our part, I guess." The hearing officer then explained that itemized wage statements have other purposes, apart from tax withholding, such as "to provide clear, unequivocal notice to the employee of exactly what they are being paid for." Gardner responded: "I guess our understanding is that we issue statements when there are taxes withheld, . . . because they already know how much days they worked and how much they get paid." Gardner later stated, "we were under the understanding that there were no taxes to be reported, not knowing that this other information's required."

In his written decision in this case, the hearing officer rejected appellant's claim that its noncompliance was inadvertent, explaining: "Additionally, 'inadvertent mistake' has been held to mean accidental or unintentional. The

evidence is undisputed that Appellant's failure to provide itemized wage statements was an intentional act on its part. Accordingly, Appellant has failed to show that its failure to provide itemized wage statements was either inadvertent or the result of clerical error or inadvertent mistake. Lastly, Appellant's ignorance of the law is not a defense to the citations."

### 2. *Appellant's Claims*

Appellant argues that respondent's decision mischaracterizes its "inadvertent misinterpretation and violation of the Labor Code as intentional conduct." Appellant further argues that respondent thereby "contravened the requirements of the Labor Code by failing to properly take into consideration that Appellant's violation was inadvertent, and as such Respondents abused their discretion in levying a penalty on Appellants."

In urging this point, appellant takes respondent to task for treating its "failure to issue wage statements as somehow intentional without any discussion of mental state concerning application of the Labor Code to its work force." Appellant maintains that it "characterized 16 individuals who did not have social security numbers as independent contractors under the good faith belief that this is what the Labor Code required. This might represent a mischaracterization of workers, but it certainly does not amount to 'ignorance of the law,' much less willfully and knowingly violating a statute."

### 3. *Propriety of Respondent's Determination*

Appellant's claim that respondent misapplied section 226.3 cannot be sustained. Respondent did not misapply the statute; rather, appellant has misconstrued it.

At bottom, appellant's claim rests on its erroneous contention that both mental state and conduct must be considered in determining inadvertence. For reasons discussed above, that contention is unavailing. The statute does not require the Labor Commissioner or the court to "attempt to divine the employer's subjective belief about the law." (*Amaral v. Cintas Corp. No. 2, supra*, 163 Cal.App.4th at p. 1204.)

Appellant also urges that respondent erred in not considering its assertion that its noncompliance was based on a good faith mistake of law. Appellant acknowledges the general rule that "ignorance of a law is not a defense to a charge of its violation." (*Hale v. Morgan, supra*, 22 Cal.3d at p. 396.) But appellant insists that it was not ignorant of the requirements of section 226.3, as evidenced by its provision of itemized wage statements to some of its workers. Instead, appellant claims, it was operating under a good faith but

mistaken belief about the law's requirements when it misclassified other employees as independent contractors.

Appellant's argument is unpersuasive. (*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc., supra,* 102 Cal.App.4th at pp. 782–783 [employer who misclassified employees "did not make a reasonable good faith legal mistake in failing to pay its workers their full wages upon termination of their employment"].) This is not a case where the legal requirements of the statute were unclear or unsettled. (See *Pagarigan v. Aetna U.S. Healthcare of California, Inc., supra,* 158 Cal.App.4th at p. 45 [counsel's "asserted error of law was unreasonable, for the attorney professed uncertainty where there was clarity"]; cf. *Amaral v. Cintas Corp. No. 2, supra,* 163 Cal.App.4th at p. 1202 ["the legal obligations imposed on employers" by the pertinent living wage ordinance "were unclear at the time of [the employer's] violations"].) Under these circumstances, appellant's mistake of law is not a defense to noncompliance. (See *Pagarigan v. Aetna U.S. Healthcare of California, Inc.,* at p. 44 [plaintiffs' "mistake of law was unreasonable" where they "never asserted ignorance" of pertinent statute but apparently instead "had chosen to ignore this plain statute for 'strategic advantage' "].) Appellant's conduct thus cannot be characterized as "inadvertent" for purposes of section 226.3. (See *Wright v. Issak, supra,* 149 Cal.App.4th at p. 1119 [trial court properly found that contractor's underreporting of payroll "was not inadvertent" but instead "was his pattern and practice from the first moment he applied for workers' compensation insurance"]; *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1084 [255 Cal.Rptr. 469] [dismissal of action was not "due to inadvertent clerical error" where it resulted from counsel's erroneous request for dismissal with prejudice].)

Finally, appellant asserts an abuse of discretion, based on its claim that respondent failed to consider evidence of its inadvertence, thereby contravening the statutory command that "the Labor Commissioner shall take into consideration whether the violation was inadvertent . . . ." (§ 226.3.)

We find no basis to sustain appellant's contention that evidence of its "mental state and inadvertent violation . . . was disregarded." Concerning appellant's mental state, respondent had no reason to consider such evidence, since the employer's state of mind is irrelevant under the statute. Concerning inadvertence, appellant's evidence was considered. The hearing officer invited proof from appellant, saying, "if you can show clerical error or inadvertent mistake, I may be able to exercise some discretion." After receiving all of the proffered evidence, the hearing officer again discussed inadvertence with appellant and agreed to "give it some consideration." No failure to comply with the statutory directive appears on this record.

We therefore reject appellant's claim that respondent misapplied section 226.3. In light of our conclusion that appellant's failure to issue itemized wage statements was not inadvertent within the meaning of the statute, we need not and do not reach appellant's alternative argument for a mitigated civil penalty.

## DISPOSITION

The judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.