Filed 4/18/22  Sensient Natural Ingredients v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| SENSIENT NATURAL INGREDIENTS LLC, Petitioner, v. THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent; CALVIN AGAR, Real Party in Interest. | F081949 (Super. Ct. No. CV-19-001906) OPINION |

-ooOoo-

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Stacy P. Speiller, Judge.

Scheppach Bauer, John M. Scheppach and Thorey M. Bauer for Petitioner.

No appearance for Respondent.

Polaris Law Group, William L. Marder; Diversity Law Group, Larry W. Lee and Max W. Gavron for Real Party in Interest.

-ooOoo-

Petitioner Sensient Natural Ingredients LLC (Employer) filed a petition for a writ of mandate (Petition) to challenge the Stanislaus County Superior Court's order overruling Employer's demurrer to real party in interest Calvin Agar's (Plaintiff) second amended complaint. We grant the Petition and direct the trial court to vacate its order and issue a new order sustaining the demurrer without leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2020, Plaintiff filed his operative second amended complaint (SAC) against Employer seeking civil penalties under a single cause of action for alleged violation of Labor Code section 226, subdivision (a)(9), part of California's wage statement law.[1] Plaintiff brought the claim on his own behalf and that of other "aggrieved employees" of Employer pursuant to the Labor Code Private Attorneys General Act of 2004 (§ 2698 et seq.) (PAGA).

Plaintiff alleges that he is a permanent, hourly, nonexempt employee of Employer and that Employer engaged in "systemic illegal employment practices resulting in violations of the California Labor Code against individuals who worked for [Employer]." Specifically, Plaintiff alleges Employer, in documenting overtime wages, "failed to comply with … section 226(a)(9)'s mandate that the wage statement identify all applicable hourly rates in effect during the pay period" in that "the wage statements incorrectly identify Plaintiff's overtime rate as being half of Plaintiff's base hourly rate of pay."

*Demurrer*

On May 4, 2020, Employer demurred to the SAC on grounds it failed to state facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e)). As part of its filing, Employer requested the trial court take judicial notice of several items including, Plaintiff's written notice to the California Labor & Workforce Development

---

[1] All statutory references are to the Labor Code unless otherwise noted.

Agency of his intent to bring a PAGA claim in this matter (PAGA Notice) (§ 2699.3) and two sample wage statements (DLSE sample wage statements) published by the California Division of Labor Standards Enforcement (DLSE).[2]  Plaintiff did not object to these requests.[3]

In opposing the demurrer, Plaintiff requested the trial court take judicial notice of various superior court records pertaining to demurrers filed in other litigation.[4]  In reply, Employer requested the trial court take judicial notice of the wage statement referred to in *Wright v. Rezenberger, Inc.* (C.D. Cal. 2018) 2018 U.S. Dist. Lexis 234702, page 30, footnote 16 (*Wright*), a case relied upon by Plaintiff.  Plaintiff moved the trial court to strike the *Wright* wage statement.

*Trial Court Ruling*

On September 1, 2020, the trial court overruled Employer's demurrer.  In doing so, the court declined to take judicial notice of any items requested by the parties except

---

[2]  Employer also requested the trial court judicially notice (1) a Notice of Appeal filed in the matter styled *Velis v. AT&T Services, Inc.*, Los Angeles Superior Court case No. 19STCV10231 (*Velis* matter); (2) a case summary printout for the appeal in the *Velis* matter (Second District Court of Appeal case No. B303011); (3) excerpts from "The 2002 Update of The DLSE Enforcement Policies and Interpretations Manual (Revised)" [2002 DLSE Manual Update]; and (4) "Fact Sheet #23: Overtime Pay Requirements of the FLSA," published by the U.S. Department of Labor, Wage and Hour Division [FLSA Fact Sheet].

[3]  Plaintiff objected, however, to the trial court taking judicial notice of a purported copy of one of Plaintiff's wage statements attached to Employer counsel's declaration in support of the demurrer (although no request for judicial notice of the wage statement by the trial court was requested by Employer), the 2002 DLSE Manual Update, and the FLSA Fact Sheet.

[4]  Plaintiff requested the trial court take judicial notice of (1) a notice of ruling rendered on demurrer to a first amended complaint in *Green v. General Atomics*, San Diego Superior Court case No. 37-2019-00028571-CU-OE-CTL (*General Atomics* matter); (2) a memorandum of points and authorities in support of a demurrer to a first amended complaint in *Rodriguez v. E. & J. Gallo Winery*, Stanislaus County Superior Court case No. CV-19-002265 (*Rodriguez* matter); and (3) a printout of the online docket for the *Rodriguez* matter through October 5, 2020.

for the PAGA Notice. The court's order reads, in major part: "Plaintiff has adequately pleaded a claim that [Employer] has violated Labor Code section 226, subdivision (a)(9). [Employer's] wage statement, as set forth in the exemplars in its demurrer, does not refer to overtime pay as a premium or enhancement, but instead refers to the overtime rate as one-half of the rate paid for regular time. The wage statement is therefore arguably confusing. Therefore, the Court declines to rule that Plaintiff has not stated a colorable claim at the pleading stage. [Employer's] judicial notice request is granted as to Exhibit 2 [i.e., the PAGA Notice], but otherwise denied as irrelevant to the pending motion since notice establishes only the existence of matters, not the truth or effect of matters asserted therein; Plaintiff's request for judicial notice is denied as moot given the Court's ruling. Counsel are advised that trial court rulings—whether state or federal—have no precedential or binding effect outside the doctrines of law of the case and *res judicata*. The Court will decide this case on its own merits, irrespective of results in other cases involving other parties, other facts, and other adjudicators. The Court retains an open mind and follows only primary authority."

*Petition for Writ of Mandamus*

On October 30, 2020, Employer filed a timely Petition challenging the trial court's decision.[5] Plaintiff filed a preliminary opposition to the Petition and Employer filed a reply thereto.

On February 19, 2021, we issued an order directing the issuance of an order to show cause (OSC) why the relief requested by Employer should not be granted. The OSC issued that same day.

---

[5] Employer also requested we stay further proceedings in the trial court pending a decision on the Petition. Employer subsequently notified this court that the trial court had stayed further proceedings. Accordingly, we denied the request for a stay as moot.

On June 1, 2021, after briefing was complete, Employer notified this court of new authority relevant to Employer's petition—*General Atomics v. Superior Court* (2021) 64 Cal.App.5th 987 (*General Atomics*).

## DISCUSSION

### I. WRIT REVIEW IS APPROPRIATE

" 'An order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment. [Citation.] Appeal is presumed to be an adequate remedy and writ review is rarely granted unless a significant issue of law is raised, or resolution of the issue would result in a final disposition as to the petitioner.' " (*Audio Visual Services Group, Inc. v. Superior Court* (2015) 233 Cal.App.4th 481, 488.) "Where there is no direct appeal from a trial court's adverse ruling, and the aggrieved party would be compelled to go through a trial and appeal from a final judgment, a petition for writ of mandate is allowed. [Citation.] Such a situation arises where the trial court has improperly overruled a demurrer. In that instance, the appellate court may direct the trial court to sustain the demurrer by writ of mandate." (*Fair Employment & Housing Com. v. Superior Court* (2004) 115 Cal.App.4th 629, 633.) Writ review is also appropriate where a petition raises a novel issue of statewide importance or where there is a conflict in applicable case law authority. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 816; *Britt v. Superior Court* (1978) 20 Cal.3d 844, 851.)

We conclude the Petition raises a significant issue of law the resolution of which, if in Employer's favor, may result in a final disposition of the case. Moreover, the issue has statewide importance. Hence, writ review is appropriate.

### II. JUDICIAL NOTICE PURSUANT TO THE PARTIES' RESPECTIVE REQUESTS IS GRANTED

Employer and Plaintiff each requested we take judicial notice of specified documents. In our order directing issuance of the OSC, we granted the parties' respective requests.

The documents judicially noticed are records of federal and California state courts and governmental agencies.[6] Accordingly, they are judicially noticeable. (Evid. Code, § 452, subds. (c) & (d); *Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1749–1750 [a court is permitted "to take judicial notice of the records and files of a state administrative board"].) We may not, however, take judicial notice of the truth of hearsay contained in those documents. (*Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 145–146.)

III.    STANDARD OF REVIEW

"Extraordinary writ review of an order overruling a demurrer is governed by 'the ordinary standards of demurrer review ....' [Citation.] We independently review the complaint and all matters we are entitled to judicially notice to determine 'whether, as a matter of law, the complaint states facts sufficient to state a cause of action. [Citations.] We view a demurrer as admitting all material facts properly pleaded but not contentions, deductions, or conclusions of fact or law.' [Citation.] If the complaint is insufficient, but there ' " 'is a reasonable possibility that the defect can be cured by amendment,' " ' [the plaintiff is entitled to have the opportunity to amend." (*Southern California Gas Leak Cases v. Superior Court* (2017) 18 Cal.App.5th 581, 586.)

---

[6]    We took judicial notice of each of the documents Employer requested the trial court judicially notice in ruling on its demurrer as well as the following documents: (1) a purported copy of one of Plaintiff's wage statements; (2) the superior court's ruling on demurrer in the *Velis* matter; (3) a second amended complaint filed in the *Velis* matter; (4) a first amended complaint filed in the *Rodriguez* matter; (5) a first amended complaint filed in the *General Atomics* matter; and (6) a PAGA notice sent by Plaintiff's counsel in an unrelated matter tentatively styled *Obiols v. Lockheed Martin Corporation*. We also took judicial notice of each of the documents Plaintiff requested the trial court judicially notice in ruling on Employer's demurrer as well as the following documents: (1) the superior court's ruling on the employer's motion for summary judgment/adjudication in the *General Atomics* matter; and (2) a conformed copy of the complaint filed in the matter styled *Bryan v. Sensient Natural Ingredients LLC*, Merced County Superior Court case No. 20CV-02387.

Central to the resolution of this matter is the proper interpretation of subdivision (a)(9) of section 226. The interpretation of a statute also presents a question of law which we review de novo. (*Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, 82 (*Heritage*).)

IV. OVERTIME AND SECTION 226

"It is, of course, fundamental that an employee who works overtime must receive extra compensation." (*General Atomics*, *supra*, 64 Cal.App.5th at p. 996.) Subject to certain exceptions not relevant here, an employee is entitled by law to be paid for overtime work, as follows: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (§ 510, subd. (a).)[7]

Section 226, at issue here, addresses how an employer must document an employee's compensation on wage statements. Section 226 provides, in relevant part:

> "(a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing … (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …." (§ 226, subd. (a)(9).)

In construing section 226, we apply well established rules of statutory interpretation. "The fundamental rule of statutory construction is to ascertain the intent of the legislative body … to effectuate the purpose of the law. In doing so, we first look to the words of the enactment and try to give effect to the usual, ordinary import of the

---

[7] Section 510, subdivision (a) also provides for double time pay (i.e., two times an employee's regular rate of pay) "in cases involving unusually large quantities of overtime." (*Alvarado v. Dart Container Corporation of California* (2018) 4 Cal.5th 542, 550, fn. 1 (*Alvarado*); § 510, subd. (a).)

language, at the same time not rendering any language mere surplusage." (*Valley Vista Services, Inc. v. City of Monterey Park* (2004) 118 Cal.App.4th 881, 888 (*Valley Vista*).) "Where a statutory term 'is not defined, it can be assumed that the Legislature was referring to the conventional definition of that term.' " (*Heritage*, *supra*, 192 Cal.App.4th at p. 82.) "The statute must be given a reasonable and common sense interpretation consistent with the legislative body's apparent purpose and intention. The interpretation should be practical, not technical, and should result in wise policy rather than mischief or absurdity.… Statutes should be interpreted with reference to the whole system of law of which they are a part [citation] and sections relating to the same subject must be read together and harmonized." (*Valley Vista*, at pp. 888–889.) "Additionally, 'statutes governing conditions of employment are to be construed broadly in favor of protecting employees.' " (*Heritage*, at p. 82.)

"The core purpose of section 226 is 'to ensure an employer "document[s] the basis of the employee compensation payments" to assist the employee in determining whether he or she has been compensated properly.' [Citations.] Section 226 is part of a matrix of laws intended to ensure workers are correctly and adequately compensated for their work." (*Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 752–753.)

Relevant here is section 226's mandate that employers provide their employees with wage statements "showing … all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …." (§ 226, subd. (a)(9).) In *Morgan v. United Retail, Inc.* (2010) 186 Cal.App.4th 1136 (*Morgan*), the court had occasion to consider the meaning of the word "showing" as used in section 226. It noted the dictionary "defines the verb 'show' as 'to cause or permit to be seen,' 'to offer for inspection,' or 'to make evident or apparent: serve as the means to reveal or make visible.' " (*Morgan*, at p. 1146, citing Webster's 3d New Internat. Dict. (2002) p. 2105.) Also important to our interpretation of section 226 is the meaning of the adjective "applicable" as used in subdivision (a)(9) which is defined

in Merriam Webster's online dictionary as "capable of or suitable for being applied[,] appropriate." (Capitalization omitted; <https://www.merriam-webster.com/dictionary/applicable> [as of Mar. 23, 2022].)

*Morgan* is relevant to this case for an additional reason. At issue in *Morgan* was whether the employer complied with subdivision (a)(2) of section 226 which requires an employer to furnish its employee with a wage statement "showing … total hours worked" by the employee. (*Morgan*, *supra*, 186 Cal.App.4th at pp. 1138–1139.) In rejecting the plaintiff's claim that wage statements which contain separate line items showing the number of regular hours worked and the number of overtime hours worked must also contain a separate line item showing the total number of hours worked, the *Morgan* court wrote: "[I]t is undisputed that the wage statements accurately listed the total number of regular hours and the total number of overtime hours worked by the employee during the pay period, and that the employee could determine the sum of all hours worked without referring to time records or other documents. The employee could simply add together the total regular hours figure and the total overtime hours figure shown on the wage statement to arrive at the sum of hours worked. There is nothing in the plain language of section 226 to support [the plaintiff's] argument that wage statements which accurately list the total regular hours and overtime hours worked during the pay period must also contain a separate category with the sum of those two figures." (*Morgan*, at p. 1147.) Thus, an important principle to be drawn from this discussion in *Morgan* is that a wage statement may be found to comply with the requirements of section 226 even though it requires an employee perform simple math calculations to determine whether his or her pay is correct. (See also, *General Atomics*, *supra*, 64 Cal.App.5th at p. 1000 [same].)

Consistent with the language of section 226, subdivision (a)(9), we must therefore determine whether the complaint adequately alleges facts sufficient to state a cause of action based on a violation of the statute—i.e., facts demonstrating Employer's wage

9.

statements used an inappropriate or unsuitable method of documenting each applicable hourly rate in effect during a given pay period (or the number of hours worked at each of those rates), or otherwise do not provide the employee with ready means to determine the correctness of his pay. In making this determination, we are guided by the principle stated in *Morgan* and reiterated in *General Atomics* that a wage statement which merely requires the employee to perform simple math to determine whether he has been appropriately compensated does not violate section 226. (*Morgan*, *supra*, 186 Cal.App.4th at p. 1147; *General Atomics*, *supra*, 64 Cal.App.5th at p. 1000.)

## V.     ANALYSIS

### A.     *Arguments Advanced by Plaintiff*

Plaintiff contends that, because section 510, subdivision (a) provides that an employee is entitled to be compensated at one and one-half times the employee's regular rate of pay, an employer's wage statements must document the employee's hourly pay rate for overtime as 1.5 times the employee's regular pay rate. We disagree. In support of this contention, Plaintiff states, "the California Supreme Court addressed this very issue in the context of calculating overtime and held that the employer must 'us[e] 1.5, not 0.5, as the multiplier for determining the employee's overtime pay rate,' [*Alvarado*, *supra*,] 4 Cal.5th [at p.] 573." (Boldface omitted.)

*Alvarado* is not on point. Although the plaintiff in *Alvarado* asserted a claim for wage statement violations under section 226 (*Alvarado*, *supra*, 4 Cal.5th at p. 551), the court did not discuss the employer's wage statement documentation format. Rather, the court's decision turned on whether the employer failed to properly *compensate* the employee for overtime hours worked by miscalculating the per-hour value of flat sum bonuses paid to the employee—a component of the employee's regular pay rate which, in turn, was used to determine the employee's overtime pay rate. (*Id*. at pp. 562–563, 568.) The Supreme Court's statement that a 1.5 multiplier must be used to determine the employee's overtime pay rate was in the context of (1) determining the amount an

employee is entitled to be *compensated under section 510*, and (2) distinguishing arguments made in other cases and guidance materials that use of a 0.5 multiplier to compensate employees was appropriate. (*Alvarado*, *supra*, at pp. 562–565.) *Alvarado* did not hold that *wage statements* must *document* an employee's overtime rate as 1.5 times its regular rate of pay for purposes of section 226.

Here, there is no dispute that an employee is entitled to be compensated for overtime at one and one-half his or her regular rate of pay. Moreover, there are no allegations in the complaint that Employer has failed to compensate its employees in accordance with section 510. Section 510 only speaks to the amount an employee is paid. It does not mandate how an employee's pay rate must be documented on wage statements. Plaintiff's reliance on *Alvarado* is misplaced.

Plaintiff also relies on *McKenzie v. Federal Express Corporation* (C.D. Cal. 2011) 765 F.Supp.2d 1222 (*McKenzie*) and *Wright*, *supra*, 2018 U.S. Dist. Lexis 234702 as support for his contention that wage statements may not document overtime hourly wage rates as a combination of both a regular hourly rate of pay (i.e., 1.0 times the regular rate of pay) and an overtime premium rate of pay (i.e., 0.5 times the regular rate of pay).

In *McKenzie*, the wage statement format utilized by the employer listed the plaintiff's nonovertime hours once (compensated at the regular rate of pay) and her overtime hours twice (one entry showing compensation at 1.0 times the regular rate of pay and the other showing compensation at 0.5 times the regular rate of pay). (*McKenzie, supra,* 765 F.Supp.2d at p. 1229.) However, the wage statement format failed to list the plaintiff's total number of hours worked. (*Ibid*.) The *McKenzie* court concluded the employer's wage statement format violated subdivision (a)(9) of section 226 because the plaintiff could not readily determine the number of hours worked in a pay period and because two rates were provided for overtime hours worked. (*McKenzie, supra,* at p 1229.)

In *Wright*, the district court granted summary judgment in favor of the plaintiffs on their claim of wage statement violations under section 226, subdivision (a)(9). (*Wright*, *supra*, 2018 U.S. Dist. Lexis 234702, at pp. *34, *48.) Similar to Employer's practice, the *Wright* employer utilized a wage statement format which listed overtime as "one-half of the effective hourly rate, even though the rate at which overtime hours were actually paid was one and one-half times the regular hourly rate" and also "included overtime hours worked in the 'regular' earnings line." (*Id*. at p. *28.) The court determined this practice "does not show either the accurate overtime rate or the accurate number of hours paid at the regular rate." (*Id*. at p. *32.) It concluded the practice violated section 226, subdivision (a)(9) because it "do[es] not make the overtime rate or actual number of hours worked at the regular hourly rate 'evident or apparent' to the employee." (*Wright, supra,* at pp. *33–*34)

In opposing Employer's demurrer, Plaintiff noted the court in *Wright* rejected "exactly the same format of wage statement[s] as used by [Employer] here" and held "wage statements identical to [Employer's] violated Labor Code section 226(a)(9)." Plaintiff continued: "It was undisputed [in *Wright*] that 'the overtime rate listed on the wage statements given [to the plaintiffs] was one-half of the effective hourly rate, even though the rate at which overtime hours were actually paid was one and one-half times the regular hourly rate.' [Citation.] 'The wage statements also included overtime hours worked in the "regular" earnings line.' [Citation.] The plaintiff [in *Wright*] argued that the wage statements violated Labor Code section 226 'because they showed the overtime rate at one-half the regular rate instead of one and one-half the regular rate and because they included overtime hours in the regular earnings line.' "

Plaintiff also wrote in opposition to Employer's demurrer, "Much like [Employer] here, the defendant in *Wright* provided a hypothetical explaining why it contended its practices complied with Section 226." To illustrate his point, Plaintiff set forth the following hypothetical used in *Wright*:

12.

| "Description | Hours | Rate | Gross Pay |
|---|---|---|---|
| Straight Time | 45 | $10.00 | $450.00 |
| Overtime | 5 | $5.00 | $25.00 |
| Total Hours Worked: 45" | | | |

Plaintiff further noted "[Employer's] practices here are identical to those rejected by the court in *Wright*" and that "[Employer's] hypothetical wage statement … mirrors the one proffered by the *Wright* defendant." Plaintiff acknowledged the following hypothetical used by Employer in illustrating its wage statement documentation practices:

| "Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Pay | $12 | 46 | $552 |
| Overtime (0.5x) | $6 | 6 | $36 |
| Total | | 46 | $588" |

The above statements made in opposition to Employer's demurrer were reiterated in Plaintiff's preliminary opposition to the Petition.

For reasons discussed below, we believe *McKenzie* and *Wright* erred to the extent they concluded overtime pay rates must be listed at 1.5 times an employee's regular rate of pay on wage statements.

### B. Arguments Advanced by Employer

Employer notes that numerous federal and California authorities discuss overtime in a manner consistent with the way it documents wages in wage statements—i.e., by noting that an employee must pay its employees both the base regular rate for overtime

hours worked and an additional or premium rate (50% of the regular rate) for those hours.**8**

Employer correctly points out that, regardless of whether overtime is (1) reflected as being compensated at the regular rate of pay *plus* being compensated at the additional premium of one-half the regular rate of pay; or (2) reflected as being compensated at a single rate of pay equal to one and one-half the regular rate of pay, the sums are equivalent. (See *Chavez v. City of Albuquerque* (10th Cir. 2011) 630 F.3d 1300, 1313 [decided under the Fair Labor Standards Act (FLSA) and noting the two approaches referenced above obtain the same result].) Thus, Employer contends both approaches are accurate and comply with section 226, subdivision (a)(9).

---

**8** Authorities cited by Employer for the proposition include: *Alvarado*, *supra*, 4 Cal.5th at pages 553–554 ["for overtime work, an employee must receive a 50 percent premium on top of his or her regular rate of pay, and in some cases, the employee must receive a 100 percent premium."]; *White v. Davis* (2003) 30 Cal.4th 528, 579 ["50% premium" in addition to employee's regular rate]; 2002 DLSE Manual Update § 49.2.1.2 ["For each overtime hour worked, the employee is entitled to an additional one-half the regular rate"]; 29 C.F.R. § 778.110(a) ["For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."]; *Walling v. Youngerman-Reynolds Hardwood Co., Inc.* (1945) 325 U.S. 419, 423–424 ["50% premium for all excess hours"]; *Walling v. Harnischfeger Corporation* (1945) 325 U.S. 427, 431, 433 [employee working overtime hours "receive[s] a premium of 50% of the basic hourly rate"]; *Parth v. Pomona Valley Hospital Medical Center* (C.D. Cal. 2007) 2007 U.S. Dist. Lexis 96146, p. *37 ["For [an employee's] overtime work he must be paid, in addition to his straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."]; *Jemine v. Dennis* (E.D.N.Y. 2012) 901 F.Supp.2d 365, 380 [same]; *Cruz v. Petty Transportation, LLC* (M.D. Fla 2008) 2008 U.S. Dist. Lexis 94903, p. *5 [allegation of failure to pay "overtime premium of one-half … hourly rate"]; *Johnson v. Wave Comm GR LLC* (N.D.N.Y 2014) 4 F.Supp.3d 423, 477 ["overtime compensation must represent a 50% premium above the actual rate paid … under normal circumstances"]; *Morine v. Lucid Star Healthcare Of Florida, Inc.* (M.D. Fla. 2015) 2015 U.S. Dist. Lexis 163582, p. *6 ["regular rate of pay … plus the overtime premium"]; *Hebron v. Directv, LLC* (N.D. Ill. 2015) 2015 U.S. Dist. Lexis 142077, p. *15, fn. 3 ["overtime premium of 0.5 times … regular rate of pay."].

Employer also argues its wage statement format is consistent with one of the two sample wage statements published by the DLSE as guidance for employers. One of the samples, provided in the context of employees paid hourly, depicts overtime as being separately compensated at the rate of one and one-half the regular rate of pay. The other sample, provided in the context of employees paid piece-rate, depicts overtime as being compensated both at the regular rate of pay and additionally at a premium rate of pay equal to one-half of the regular rate of pay. A DLSE note to the piece-rate sample wage statement reads, "Because all hours have been paid at their respective rates, the overtime premium portion of those hours is computed at a factor of either .5 (overtime) or 1 (double time)."

The sample wage statement for a "worker paid piece rate" published by the DLSE tends to support Employer's position. That exemplar indicates that all hours worked (including overtime and double-time hours) should be shown as compensated at the employee's weighted-average regular pay rate and that overtime hours should also be shown as compensated at an overtime premium rate (i.e., 0.5 times the weighted-average regular pay rate for overtime or 1.0 times the weighted-average regular pay rate for double time.)[9]

Plaintiff contends that, because he is not a piece-rate worker, the format depicted in the DLSE piece-rate sample wage statement is inapplicable. Plaintiff fails to articulate a persuasive reason why the method of documenting overtime in the case of a piece-rate worker must differ from that in the case of an hourly worker. Notably, the court in *General Atomics* recently rejected such an argument and concluded, in the context of workers paid on an hourly basis, "that the 0.5x overtime rate is an 'applicable hourly rate'

---

[9]     In the DLSE piece-rate example, a weighted-average regular pay rate is used because the example assumes the employee may be compensated at two different hourly rates—one rate for "productive" time (i.e., piece-rate work) and another rate for "non-productive" time (e.g., time spent in meetings and training).

15.

that may be listed on a wage statement under section 226." (*General Atomics*, *supra*, 64 Cal.App.5th at p. 1001.)

*General Atomics* was decided on facts closely resembling those in the present case. In *General Atomics*, the plaintiff contended its employer " 'failed to identify the correct rate of pay for overtime wages' because its wage statements showed '0.5 times the regular rate of pay rather than 1.5.' " (*General Atomics*, *supra*, 64 Cal.App.5th at p. 990.) The employer moved for summary adjudication on the plaintiff's claim "contend[ing] that its wage statements complied with the statute because they showed the total hours worked [i.e., nonovertime and overtime], with their standard rate or rates, and the overtime hours worked, with their additional premium rate." (*Id.* at p. 991.) The trial court denied the employer's motion and the employer petitioned for a writ of mandate. (*Ibid*.) The *General Atomics* court granted the petition and issued a writ directing the trial court to vacate its order denying the motion for summary adjudication and to enter an order granting the motion. (*Id.* at p. 1002.)

The plaintiff in *General Atomics* (like the plaintiff here), relied primarily on *McKenzie* and *Wright* in opposing the employer's writ petition. (*General Atomics*, *supra*, 64 Cal.App.5th at p. 999.) The *General Atomics* court found both cases unpersuasive and distinguished them on their facts. (*Ibid*.) In *McKenzie* it was "unclear how the two overtime entries related to the standard (nonovertime) entry and to one another" whereas in *General Atomics*, because the employer's wage statements included a line item for "total hours worked," it was "apparent that the 'overtime' hourly rate represents compensation in addition to the standard contractual compensation [i.e., regular rate of pay]." (*General Atomics*, at p. 999) As to *Wright*, the *General Atomics* court said *Wright* did not consider a situation where an employee earns "multiple hourly rates in a single pay period"—e.g., where the employee is compensated at different rates depending on the type of work performed— or "the complexities of displaying a 1.5x overtime rate in that situation." (*General Atomics*, at p. 999.) The court further noted that "the reasoning

16.

in *Wright* and, to some extent, *McKenzie*, appears to run afoul of the principle in *Morgan* … that a wage statement does not violate section 226 even if it requires the employee to perform simple math to obtain the required information."  (*General Atomics*, at p. 999.)

*General Atomics* considered the sample wage statements published by the DLSE and discussed previously in this opinion.  In that regard, the *General Atomics* court wrote:

> "[T]he DLSE wage statement contains a line item for 'Overtime,' which lists overtime hours a second time and a 0.5x overtime premium hourly rate.  A DLSE note states, 'Because all hours have been paid at their respective rates, the overtime premium portion of those hours is computed at a factor of either .5 (overtime) or 1 (double time).'

> "The DLSE's sample piece-rate wage statement supports our conclusion that the 0.5x overtime rate is an 'applicable hourly rate' that may be listed on a wage statement under section 226.  It also supports our conclusion that a line item labeled 'overtime' rather than 'overtime premium' does not violate the statute under these circumstances.  Although piece-rate compensation is not at issue in this proceeding, the concepts embodied by this DLSE sample wage statement apply by analogy here.  [The employee]'s efforts to distinguish this statement are unpersuasive.  And, while the DLSE's sample hourly wage statement shows a 1.5x overtime rate (for an employee earning a single hourly rate), we disagree that the sample supports [the employee]'s position that an hourly wage statement must show a 1.5x overtime rate to comply with the statute."  (*General Atomics*, *supra*, 64 Cal. App. 5th at p. 1001.)

As the foregoing quote demonstrates, *General Atomics* also rejected the argument the wage statements at issue were deficient because they failed to denominate the listed overtime rate as a "premium" rate over and above the regular rate of pay applied to all hours—a contention also made here by Plaintiff.  (*General Atomics*, *supra*, 64 Cal.App.5th at pp. 1000–1001.)  The court explained, "because the wage statements … separately state the total hours worked, it is apparent that the overtime rate and hours listed represent compensation *in addition to* the employee's standard compensation.  It is by definition a premium on top of the employee's nonovertime compensation."  (*Ibid.*)

17.

We agree with the reasoning in *General Atomics* and reject *Wright* and *McKenzie* to the extent they concluded that overtime rates must be listed at 1.5 times the employee's regular rate of pay on wage statements. So long as an employee can determine, from his wage statement alone, and using only simple math, whether he has been properly compensated, then section 226's purpose has been met. (See *General Atomics*, *supra*, 64 Cal.App.5th at pp. 999–1000; *Morgan*, *supra*, 186 Cal.App.4th at pp. 1147–1149.) We also agree with *General Atomics*' conclusion that, where an employer lists an employee's overtime hours as being compensated both at the employee's regular rate of pay and an overtime premium rate of pay (i.e., 0.5 times the regular rate of pay), it is unnecessary for the employer to denominate the rate as a "premium." (*General Atomics*, at p. 1001.)

## VI. THE COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION

As noted previously, we took judicial notice over Plaintiff's objection of a purported copy of one of Plaintiff's wage statements that was attached to Employer's counsel's declaration. However, the contents of the document constitute hearsay, the truth of which this court may not judicially notice. Upon reflection, we consider judicial notice of the wage statement to have been improvidently granted. Although we might generally refuse to consider the purported wage statement on hearsay grounds, Plaintiff's counsel acknowledged the authenticity of the wage statement in oral argument to this court. The concession constitutes a judicial admission which we are entitled to judicially notice. (*People v. Jackson* (2005) 129 Cal.App.4th 129, 161; *Alameda County Waste Management Authority v. Waste Connections US, Inc.* (2021) 67 Cal.App.5th 1162, 1174.) Even absent this agreement as to authenticity, however, Plaintiff made certain admissions relevant to the wage statement which we consider upon review and which aid our resolution of the Petition.

18.

In short, Plaintiff's arguments and comparison of the purported wage statements at issue here and in *Wright* reveal the facts of this case align closely with those at issue in *General Atomics*. The statement proffered by Employer further supports this conclusion.

In his opposition to Sensient's demurrer, plaintiff argued that the court in *Wright* rejected "exactly the same format of wage statement[s] as used by [Sensient] here" and held "wage statements identical to [Sensient's] violated Labor Code section 226(a)(9)." Further quoting from plaintiff's brief in opposition to Sensient's demurrer: "It was undisputed [in *Wright*] that 'the overtime rate listed on the wage statements given [to the plaintiffs] was one-half of the effective hourly rate, even though the rate at which overtime hours were actually paid was one and one-half times the regular hourly rate.' [Citation.] 'The wage statements also included overtime hours worked in the "regular" earnings line.' [Citation.]"

Here, the complaint is premised on the allegation that "Whenever overtime wages were paid, [Employer] failed to comply with Labor Code section 226(a)(9)'s mandate that the wage statements identify all applicable hourly rates in effect during the pay period. *In this respect, the wage statements incorrectly identify Plaintiff's overtime rate as being half of Plaintiff's base hourly rate of pay*." (Italics added.)

Without more, the above allegations are insufficient to constitute a cause of action. As demonstrated in *General Atomics*, overtime hours may be represented as being compensated at 0.5 times an employee's regular hourly rate of pay (i.e., the overtime premium rate of pay) if additional information on the wage statement shows those hours as also being compensated at the employee's regular hourly rate, and so long as the employee's total hours worked are capable of ready determination and the wage statement is not otherwise misleading.

Plaintiff has not alleged sufficient facts to demonstrate that Employer's manner of documenting overtime rates of pay violate section 226, subdivision (a)(9). Accordingly,

19.

we direct the trial court to vacate its order overruling the demurrer and enter a new order sustaining the demurrer.

## VII.   LEAVE TO AMEND

As part of its Petition, Employer requests that we direct the trial court to deny Plaintiff the opportunity to amend its complaint. We grant the request.

"Denial of leave to amend is not unusual following writ review of an overruled demurrer, because extraordinary relief is typically contemplated when there is a dispositive issue of subject matter jurisdiction [citation]; a cause of action is plainly and irremediably defective [citation]; or a defense is necessarily complete [citation]. However, leave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations. [Citation.]  If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.)  We would add that a court may also consider matters that are subject to judicial notice in determining whether a complaint is capable of amendment.  (See *Southern California Gas Leak Cases v. Superior Court*, *supra*, 18 Cal.App.5th at p. 586 [complaint and all matters subject to judicial notice may be considered on demurrer].)

Employer contends leave to amend should be denied because plaintiff must adequately exhaust administrative remedies before bringing a PAGA claim and that he is unable to meet that requirement.  Employer argues that plaintiff's PAGA Notice "is based entirely on his assertion that it was unlawful for Employer to list the overtime rate as 0.5 [times], as opposed 1.5 [times], the regular hourly rate of pay," that such a claim is legally baseless, and that plaintiff is prohibited from amending his complaint "to advance additional claims, as they were not exhausted."

20.

Employer is correct that Plaintiff must exhaust his administrative remedies as a prerequisite to bringing a PAGA claim. (See § 2699.3 subd. (a)(1)(A); *Esparza v. Safeway, Inc*. (2019) 36 Cal.App.5th 42, 59 ["PAGA's prefiling notice requirement is a mandatory precondition to bringing a PAGA claim."].) Here, Plaintiff's PAGA notice was premised entirely on his assertion that Employer violated subdivision (a)(9) of section 226 because "the overtime rate of pay identified on all wage statements was identified as half (.5) time rate, rather than one and one-half (1.5) times the regular rate of pay."

Based on Plaintiff's concessions in briefing and oral argument, we conclude Plaintiff is unable to amend its SAC to state facts sufficient to state a cause of action. The wage statement format used by Employer to document its employee's "applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" complies with section 226, subdivision (a)(9). Accordingly, leave to amend is properly denied.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to set aside its order overruling Employer's demurrer to the complaint and to enter an order sustaining the demurrer without leave to amend. Employer shall recover its costs in this writ proceeding.

FRANSON, J.

WE CONCUR:


POOCHIGIAN, ACTING P. J.


DE SANTOS, J.

21.